9   349
15   206

## KENDALL ET AL. V. SAN JUAN SILVER MIN. CO.

1. Where pleadings are contradictory, and the issues are narrowed by a stipulation to issues of facts of which the court can take judicial notice, it is proper for the court to decide the case upon a motion for judgment upon the pleadings and stipulation, and it is unnecessary to assign the case for trial. The facts left in issue, being facts of which the court could take judicial notice, are deemed part of the pleadings, and not matter for evidence.

2. A mining location made tortiously upon an Indian reservation before the Indian title is extinguished will not avail against a location made after the land is opened for settlement.

*Appeal from District Court of San Juan County.*

IT appears from the record that about the month of October, 1880, the appellee made its application in the United States land office in Lake City, Colorado, for patent to the Titusville lode claim, situated in San Juan county, and that the appellants, on the 23d of October, 1880, filed in said office their adverse claim, alleging that a certain portion of the premises sought to be patented by the appellee was covered by the Bear lode claim, a prior location owned by the appellants. The present action was afterwards instituted by the appellants in the district court of San Juan county, in support of their adverse claim.

The complaint avers the location of the Bear lode by the appellants on the 3d day of September, 1872, by the sinking of a discovery shaft, the discovery of mineral, and the due performance of all the various acts necessary to perfect a mining location under the congressional and statutory laws and the local rules and customs; also that the claim was then open to entry as mineral land, and was unoccupied and unclaimed by any person. The performance of annual labor, and all other acts necessary to preserve said Bear lode from forfeiture, are likewise averred. The complaint states, further, that the Bear lode claim, as originally located, extended one thousand five hundred feet in length, and one hundred feet in width, on each side of the center of the vein, and so remained until the 14th day of October, 1878, when the owners filed an additional certificate of locations in the office of the recorder of San Juan county, claiming one hundred and fifty feet on each side of the center of the vein. It alleges that the Titusville lode is a junior location, and includes within its boundaries a portion of the territory embraced in the Bear location. From the description given in the pleadings of the portions of said claims which are in conflict, it appears that the Titusville location includes one thousand two hundred feet in length of the Bear surface ground, and in width covers

more than the south half of said surface ground for said entire one thousand two hundred feet. The plaintiffs further allege that they have expended the sum of $150 in the preparation and filing of their adverse claim, and they pray judgment for the possession of the premises, for the recovery of said sum of $150, and for costs of suit.

The appellee's answer denies all the material allegations of the complaint, and denies that the ground in controversy comprised a part of the unappropriated public domain of the United States, and that it was open to location on the 3d day of September, 1872. It alleges that at that date it comprised a portion of a certain tract of land, which, by treaty between the United States and certain confederated bands of Ute Indians, in Colorado, duly approved, and afterwards, on November 6, 1868, duly proclaimed by the president of the United States, had been set apart to the use and occupation of said Indians, and that the Indian title to said tract of land was not extinguished until March, 1874. The answer further alleges that, if plaintiffs were entitled to make a location on said tract of land at the date mentioned, they were not entitled to a location exceeding fifty feet in width. And, for further answer and cross-complaint, the appellee alleges the location of the Titusville lode claim on the 29th day of August, 1874, together with the existence of all conditions and the performance of all acts necessary to constitute a valid location of the vein and territory described in the location certificate, including the premises in controversy, and prays judgment for the possession thereof, and for costs.

To this pleading of the appellee the appellants filed a replication, traversing all its material allegations, and denying, among other things, that, at the date of the appellants' location, the ground in controversy comprised a portion of the Ute Indian reservation, and that at the date of the appellee's location the ground in dispute was part and parcel of the unappropriated public domain.

Subsequently, a stipulation, signed by the attorneys of the contesting parties, was filed in the cause, conceding the truth of the allegations of the respective pleadings, and that both parties had complied with all the requirements of the law in respect to the location and development of their said claims, as set forth in their pleadings, save only the allegations that, at the time of their respective locations, the ground in controversy was a part of the unappropriated public domain open to location; and excepting, further, the right of the appellants, if entitled to locate a claim at all on said tract of land on the 3d day of September, 1872, to locate a claim of a greater width than fifty feet.

The next step in the cause was the filing of a motion, by the appellee, for judgment upon the pleadings, the stipulation of facts, and a disclaimer of the appellee filed upon the hearing of said motion. In the latter document the defendant disclaimed all right or title to that portion of the premises in controversy which comprised the center fifty feet, or twenty-five feet on either side of the center line, of the Bear lode location. Upon the hearing of this motion it was sustained by the court, and the action of the appellants dismissed. Judgment was also entered in favor of the appellee for the premises then remaining in controversy between the parties, and for the costs of suit; to all of which rulings the appellants duly excepted.

Messrs. C. H. TOLL and HENRY FORD, for appellants.

Messrs. M. B. CARPENTER and HUDSON and SLAYMAKER, for appellee.

BECK, C. J. The appellants assigned for error the allowance of the motion for judgment on the pleadings, stipulation of facts and disclaimer; also that the court erred in rendering judgment in favor of the appellee. The grounds of error alleged are that the stipulation of facts and the disclaimer were not instruments in the

nature of pleadings, but matters only cognizable as evidence; hence that they could not be properly considered upon a motion, but only on a trial of the issues joined.

We are of the opinion that this proposition is unsound. One of the most important objects of the present system of pleading is to compel the parties to make their issues cover the real facts in dispute, so that neither party shall be subjected to the trouble and expense of proving what is not in fact disputed. It requires that the real matter in controversy shall be brought clearly before the court, and that the precise points, both of fact and of law, involved, shall be disclosed before the trial is entered upon. Another advantage claimed is that it may be known, from an inspection of the respective statements of the parties, whether, if duly proven, they warrant any relief upon the complaint or cross-complaint, and whether there be a legal defense to the action. It is true, by the original pleadings in this case, the objects sought to be attained by the code provisions were defeated; for the pleadings of each party denied every allegation of the other, regardless of truth, with one or two immaterial exceptions. But the filing of the stipulation of facts operated as a waiver of the numerous traverses, and narrowed the issues to three questions of law and fact. These questions were: *First.* Was the territory in dispute open to location as mineral land, under the laws of the United States, on the 3d day of September, 1872? *Second.* If it was open to location at that date, were the plaintiffs then entitled, under the law, to locate a claim exceeding fifty feet in width? *Third.* Were the premises on the 29th day of August, 1874, when the defendant's location was made, a part of the unappropriated public domain, open to location as mineral land?

The position assumed by appellants' counsel is that the issues were not modified by the filing of these papers, but remained for trial as originally framed; that the

court could not take judicial notice of instruments or papers of this character, waiving legal rights, although executed by the parties themselves, and duly filed in the cause, but that the issues thus attempted to be waived should have been disposed of on trial of the cause, by producing the said stipulations in evidence. The fallacy of these propositions is apparent. The filing of the stipulation and disclaimer wholly withdrew the matters therein mentioned, as being conceded or waived, from the consideration of the trial court. These matters were no longer in the case. Thereafter all the allegations concerning the location of the Bear and Titusville lode claims, the dates of locations, the expenditures made, the work done, and the various acts performed in compliance with the mining laws, and with the local rules and regulations, stood untraversed. There remained no issues for trial requiring the production of evidence; and it would have been an idle ceremony to have impaneled a jury to witness the disposition of the case by the presiding judge upon considerations of law and fact whereof he was bound to take judicial notice.

It is true the complaint alleged that at the date of the location of the Bear lode, September 3, 1872, the premises in controversy were unoccupied and unclaimed mineral lands of the public domain; that the answer alleged that the premises, at that time, comprised a part of a certain tract of land set apart as a reservation for the confederated bands of the Ute Indian Nation by virtue of a treaty made and concluded between the United States and said Indian tribes, duly accepted and ratified and confirmed by a proclamation of the president of the United States issued on the 6th day of November, 1868; that the Indian title to said reservation, including the premises in controversy, was not extinguished until the month of March, 1874; and that on the 29th day of August, 1874, the date of the appellee's location of the premises in controversy as part of the Titusville lode

claim, the same was then a part of the unoccupied and unappropriated mineral domain of the United States; also that the replication denied these averments of the answer. It is likewise true that the issuable facts just mentioned were not in any manner affected by the making and filing of the stipulations. But all the facts involved in these issues were of that character, the existence of which courts are bound to take judicial cognizance. The ultimate rights of the parties, therefore, depended upon judicial conclusions to be drawn from a consideration of all truthful allegations of fact, whether traversed or untraversed, in connection with the implied propositions of law necessarily arising out of these several propositions of fact.

For example, although the plaintiffs, in the location of the Bear lode, performed every act necessary to constitute a valid location of a mining claim, yet, if the territory upon which these acts were performed did not comprise a portion of the unappropriated public domain open to location as mineral land, the work done and expenditures made secured no rights to the locators thereof. The question of right depends upon the truth of the allegations concerning the existence, date, boundaries, and terms of the original treaty with the Indians, and the truth of the allegations concerning the alleged relinquishment of the Indian title to that portion thereof which includes the premises in controversy, considered with reference to the law arising upon such facts. As before stated, these were matters concerning which the courts take judicial notice. The treaties mentioned were incorporated, with the laws enacted by congress, in the Statutes at Large of the United States. See St. at Large U. S. 1868, tit. "Treaties," p. 119; also 18 St. at Large, pt. 3, p. 36. The accepted doctrine is that the constitution and laws of the United States, and all treaties made under the authority of the United States, constitute the supreme laws of the land; and the judges in every state

are bound thereby, and will take judicial notice of their provisions. Article 6, § 2, Const. U. S.; 1 Greenl. Ev. §§ 5, 490; Bliss, Code Pl. § 185. Courts also take judicial cognizance of the civil divisions within a state; of counties, townships and towns; and of the existence and general location of places referred to in the pleadings, and, if within the jurisdiction of the court, the county to which they belong. Bliss, Code Pl. §§ 186–189. Exercising such cognizance, the court had judicial knowledge that the contested facts were as alleged in the defendant's answer; that is to say, at the time of the plaintiffs' location of the Bear lode claim the ground claimed was within the Indian reservation, but that the Indian title thereto had been extinguished prior to the location of the Titusville lode by the defendant. All propositions of fact bearing upon the case were therefore legitimately before the court on the motion for judgment, and it only remained for the court to construe the propositions of law arising thereon in order to pronounce judgment. The real issues, then, or questions to be decided, being purely legal, it was unnecessary to assign the cause for trial, and they were properly decided on the defendant's motion for judgment.

Was the plaintiff entitled to judgment for any portion of the premises in controversy? It is clear that, unless a valid location of a mining claim can be made upon territory while it constitutes part of a reservation set apart by treaty for the exclusive use of an Indian nation, the plaintiff acquired no rights whatever by his location of September 3, 1872; and this is the only location asserted by him.

By the treaty proclaimed November 6, 1868, the United States solemnly agreed that the district of country therein described "shall be and the same is hereby set apart for the absolute and undisturbed use and occupation of the Indians herein named; * * * and the United States now solemnly agree that no persons except those herein

authorized so to do, and except such officers, agents and employees of the government as may be authorized to enter upon Indian reservations in discharge of duties enjoined by law, shall ever be permitted to pass over, settle upon, or reside in the territory described in this article, except as in this article herein otherwise provided." There is no provision excepting any part of the territory included within the bounds of the reservation for occupation or location for agricultural or mining purposes by white persons.

It has been decided by the supreme court of the United States that, in the prosecution of an adverse claim to a mineral location, the plaintiff must show such a location as entitles him to possession of the ground claimed as against the United States, as well as against the other claimant; that if it is not valid as against the one, it is not as against the other; and that he must establish a possessory title in himself, good as against everybody. *Gwillim v. Donnelan*, 115 U. S. 45.

The effect of the treaty was to withdraw the whole of the land embraced within the reservation from private entry or appropriation, and during its existence the government could not have authorized the plaintiffs to enter upon the ground in controversy for the purposes of discovering and locating a mining claim. On the contrary, the government stood pledged to prevent its citizens from entering upon the reservation for any such purposes. The right to locate mineral lands of the United States is declared to be a privilege granted by congress. No such grant including the premises in controversy existed at the time of the plaintiffs' location. It is also held that a location, to be effective, must be good at the time it was made, and that it cannot be good when made if there is then an outstanding grant of the exclusive right of possession to another. The possession of the plaintiffs at the time of their location of the Bear lode was tortious. Such being the character of their possession, and assum-

ing to locate a claim not only without legal authority, but in violation of law, the attempted location was a nullity. It was just as if it had never been made. *United States v. Carpenter,* 111 U. S. 347; *Belk v. Meagher,* 104 U. S. 279.

The foregoing objections do not attach to the defendant's location of the Titusville lode. This location, made after the Indian title was extinguished, was conceded to be regular in all respects, save as to the defendant's allegation that the premises comprised a part of the unappropriated public domain open to location as mineral land. This allegation was traversed merely, the only effect of which was to assert priority of appropriation by the plaintiffs. The plaintiffs' claims having failed, the judgment of the court was correct. Judgment affirmed.

*Affirmed.*