## UNITED STATES *v.* CARPENTER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF MINNESOTA.

Argued April 2d, 1884.—Decided April 14th, 1884.

*Public Lands—Indian Treaties.*

The location of land scrip upon lands reserved for Indians under the provisions
of a treaty with an Indian tribe, and the issue of a patent therefor, are
void.

This was a suit in equity, to vacate a patent of the United
States issued to one August Cluensen, on the 15th of May, 1874,
embracing a tract of land in the county of Pipestone, in the
State of Missouri, described as the southwesterly quarter of
section one (1), in township one hundred and six (106), range
forty-six (46), west of the fifth (5th) principal meridian, accord-
ing to the government surveys. The ground of the suit was
that by treaty between the United States and the Yankton
tribe of Sioux or Dacotah Indians, ratified on the 26th of
February, 1859, the tract, which embraces what is known as
the Red Pipestone Quarry, in that county, was reserved from
sale or appropriation under any scrip or warrant of the govern-
ment. The eighth article of the treaty stipulated that the
Yankton Indians should be "secured in the free and unre-
stricted use" of the quarry, or "so much thereof as they have
been accustomed to frequent and use for the purpose of pro-
curing stone for pipes;" and the United States agreed to cause
to be surveyed and marked, so much thereof as should be
"necessary and proper for that purpose, and retain the same
and keep it open and free for the Indians to visit and procure
stone for pipes, so long as they shall desire." Revision of Ind.
Treaties, 860. The bill alleged that the tract described is a
part of the Red Pipestone Quarry mentioned in this article.

In the execution of their agreement, the United States caused
so much of the quarry as appeared to be necessary and proper
for the purposes of the reservation provided for to be surveyed
and marked. A diagram and the field notes of the survey

were duly returned, filed, and recorded in the General Land Office, and in the office of the Surveyor-General of Minnesota. In February, 1860, copies of them were transmitted by the Commissioner of the General Land Office to the Surveyor-General of the United States for that State with instructions " to lay the same down " on the map of the State in his office, and to respect them when the public surveys reached the locality, by closing their lines upon the reservation. At this time the land included in the reservation was not surveyed ; but afterwards, for some unexplained reason, and in violation of the instructions, it was surveyed with other public lands in its vicinity. In July, 1872, after this survey, the commissioner directed the surveyor-general to locate the reservation on the official plat in his office, from the field notes and plat of the original survey, and to transmit authentic copies to the general and local land offices ; or, if it should be impossible to locate it from these data, to direct a re-survey of the tract, so that it might be located and described upon the official plats, and its boundaries respected in accordance with the treaty.

In pursuance of these instructions the surveyor-general caused a re-survey of the quarry reserve, and immediately marked it upon the official plats in his office. Its boundaries as resurveyed correspond and are substantially coincident with the lines of the original survey, and embrace the quarter section of land above described. Notwithstanding he reservation by the terms of the treaty and its survey, and appropriation to the purposes mentioned, one August Cluensen, on the 15th of July, 1871, was permitted by the land officers of the district to locate upon the quarter section a piece of land scrip issued under the authority of the laws of the United States, known as Louisiana Agricultural College scrip, and to enter the section at that office with this scrip. On the 15th of May, 1874, a patent was issued to him pursuant to his entry. All the interest which he thus acquired, if any, was subsequently transferred, by divers mesne conveyances, to the defendant, Herbert M. Carpenter, who claimed to be the owner of the premises covered by the patent. The bill averred that all the provisions of the treaty were still in force, that the Yankton Indians had always con-

tinued to visit and procure stone from the quarry, and had always desired, and still desired so to do ; and that the officers and agents of the government, in all that they did in connection with the entry of the land and issuing the patent acted without authority of law and in violation of the provisions of the treaty. The bill concluded with a prayer for a decree that the patent and the entry on which it rests might be vacated, and for further relief. To this bill the defendants demurred for want of equity. The demurrer was sustained and the bill dismissed ; and the case came here on appeal.

*Mr. Assistant Attorney-General Maury* for appellant.

*Mr. John B. Sanborn* for appellee.

Mr. Justice Field delivered the opinion of the court. He stated the facts in the foregoing language, and continued :

The action of the government in causing the tract described to be marked on the official plats in the land offices as reserved from sale was clearly within the line of its duty under the stipulations of the treaty. The bill alleges that the tract was a part of the Red Pipestone Quarry mentioned in the eighth article. After the treaty, until the survey was made, and the actual extent of the reservation was thus designated, no part of the land containing the quarry could have been taken up either by settlement or by location under the Louisiana Agricultural College scrip. The whole of such land was by the treaty withdrawn from private entry or appropriation until the government had determined whether any portion less than the whole should be reserved. Its power of selection, if the whole was not retained, could not be restricted by the action of private parties. So, in any view which can be taken, the entry of Cluensen was void. It matters not whether the land had been surveyed or not, the treaty was notice that a part of the quarry would be retained by the government, and that the whole might be, for the use of the Indians. This purpose and the stipulation of the United States could not be defeated by the action of any officers of the land department.

The court therefore erred in sustaining the demurrer. The decree must accordingly be reversed, with directions to over-rule the demurrer, the defendant to have leave to answer ; and

*It is so ordered.*