### UNITED STATES v. COOS BAY WAGON-ROAD CO.

#### (Circuit Court, D. Oregon. August 25, 1898.)

1. PUBLIC LANDS — GRANTS FOR PUBLIC IMPROVEMENTS — CONCLUSIVENESS OF DECISION OF LAND DEPARTMENT.

   Whether lands are within the limits or subject to the operation of a grant for public improvements is not a question of fact, within the rule that the judgment of the land department is final upon questions of fact.

2. SAME—EFFECT OF ISSUANCE OF PATENT.

   The land department cannot enlarge the limits of a grant of lands by congress, and its action in issuing patents thereunder for lands lying outside the boundary fixed by the act itself is without validity to convey title, and will be canceled at suit of the government.

3. SAME—LANDS RESERVED FROM GRANT—HOMESTEAD SETTLER.

   Unsurveyed land lying within the boundaries of a grant reserving from its operation all lands to which homestead or pre-emption rights had attached, which at the date of the grant was occupied by a homestead settler, who took timely action after its survey to acquire title, was not subject to the grant, and its certification thereunder by the land department conveyed no title.

John H. Hall, U. S. Atty.

E. B. Watson, for defendant.

BELLINGER, District Judge. This is a suit to cancel certain patents to lands under a grant by the United States, and for other relief. The facts in the case, as appears from the bill of complaint, are as follows: On the 3d day of March, 1869, the congress of the United States passed an act granting to the state of Oregon, to aid in the construction of a military wagon road from the navigable waters of Coos Bay to Roseburg, in the state of Oregon, the alternate sections of public land, designated by odd numbers, to the extent of three sections in width, on each side of said road; and said act provided for the right of indemnity for losses sustained within the original grant to the extent of six miles on either side of the line of said road; and said act further provided that the lands granted should not exceed three sections per mile for each mile of road actually constructed, and that said grant should not embrace any mineral lands of the United States, or any lands to which homestead or pre-emption rights had attached, and that all lands reserved or appropriated should be reserved from the operation of the act. On the 22d day of October, 1870, the legislature of Oregon granted all the lands and rights inuring to it under this grant to the defendant company, upon the conditions prescribed in the act of congress. On June 18, 1874, congress passed an act by which it was provided:

"That in all cases when the roads, in aid of the construction of which said lands were granted, are shown by the certificate of the governor of the state of Oregon as in said acts provided to have been constructed and completed,

patents for said land shall issue in due form to the state of Oregon as fast as the same shall, under said grants, be selected and certified, unless the state of Oregon shall, by public act, have transferred its interests in said land to any corporation or corporations, in which case the patents shall issue from the general land office to such corporation or corporations, upon the payment of the necessary expenses thereof."

On September 19, 1872, the governor of the state of Oregon certified to the construction by the Coos Bay Wagon-Road Company of its road in accordance with the land grant act. It further appears that on March 26, 1873, there was certified to the wagon-road company, under its grant, the N. W. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of section 25, township 27 S., range 12 W. of the Willamette meridian. But prior to this, and in January, 1869, one Samuel C. Braden, a qualified homestead entryman, settled upon this land, with the intention of homesteading it. Braden has continued to reside upon the land, and has cultivated it and improved it, from the date of his settlement to the present time; and within 90 days from the date of the filing of the township plat of the survey of said land in the district land office, but subsequent to the certification of the land to the road company, he made his homestead application in good faith. On the 26th of March, 1873, and on February 12, 1875, the president issued patents to the road company for some 1,080 acres of land, as inuring to it under the grant,—not including the tract covered by Braden's homestead claim. It is claimed in behalf of the United States that these patents were erroneously issued, the lands so patented being without the place limits of the grant, and that there should be a decree canceling the patents issued therefor to the road company, and the certificate issued for the land covered by the homestead settlement and application of Braden.

The conclusiveness of the judgment of the land department as to the right of the road company to lands under the grant is limited to lands that are subject to the grant. As to such lands, the action of the land department in determining all questions upon which the grantee's right depends is final. "But it is also equally true that when by act of congress a tract of land has been reserved from homestead and pre-emption, or dedicated to any special purpose, proceedings in the land department in defiance of such reservation or dedication, although culminating in a patent, transfer no title, and may be challenged in an action at law. In other words, the action of the land department cannot override the expressed will of congress, or convey away public lands in disregard or defiance thereof." Burfenning v. Railway Co., 163 U. S. 321, 16 Sup. Ct. 1018. Lands without the limits of the grant are not subject to the grant, and the adjudication of the land department to the contrary is no more conclusive than it would be if the lands were expressly reserved from the grant. If it is not the will of congress that the lands shall be granted, the action of the land department cannot extend the grant over them. Whether lands are within the limits of the grant is not a question of fact, within the rule which makes the consideration and judgment of the land department upon questions of fact final. Such a question is determined by the records of the department, precisely as the lines of the public surveys are proved. The grant in this case is of the odd-numbered sections, to the extent of three sections in width, on each side of

the road, and an additional amount equal to the amount reserved or otherwise appropriated, not exceeding six miles in distance from the line of road. The utmost limit of the grant is therefore six miles on either side of the road. The action of the land department cannot enlarge the grant or extend its boundaries, as it may do if the limits of the grant which are capable of exact location from the plats and maps in the land office are made to depend upon parol testimony.

The homestead settlement of Braden preceded the wagon-road grant. It has continued for nearly 40 years, during which time he has cultivated and improved the land settled on; and such land was therefore "appropriated," within the terms of the granting act, before the grant became effective. Lands to which homestead or pre-emption rights had attached when the line of road was definitely fixed were as much excepted from the grant as if they had been excluded by its terms. Weeks v. Bridgeman, 159 U. S. 545, 16 Sup. Ct. 72. The road company could not acquire this land thus held under a homestead claim, and the certificate which it holds is with notice, from possession of all the rights and the claims of the party so in possession. Railroad Co. v. U. S., 165 U. S. 483, 17 Sup. Ct. 381. Under such circumstances it is the duty of the United States to seek to vacate and annul the certificate by which the land claimed under Braden's homestead was erroneously certificated to the road company, to the end that the United States may discharge the obligation which it has assumed to the homestead claimant. Hughes v. U. S., 4 Wall. 235. The demurrer is overruled.