KING v. McANDREWS et al.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1901.)

No. 1,569.

1. LAND DEPARTMENT—QUASI JUDICIAL TRIBUNAL—POWER.

The land department of the United States, including in that term the secretary of the interior, the commissioner of the general land office, and their subordinate officers, constitutes a special tribunal, vested with judicial power to hear and determine the claims of all parties to the public lands, subject to its disposition, and with power to execute its judgments by issuing patents to the parties entitled to them.

2. PATENT TO LAND WITHIN JURISDICTION OF DEPARTMENT IMPERVIOUS TO COLLATERAL ATTACK.

A patent of land within its jurisdiction evidences the judgment of the land department, and constitutes a conveyance of the legal title of

the nation to the patentee in execution of the judgment. It is, like the judgments of other judicial tribunals, impervious to collateral attack.[1]

**3.** PATENT NOT ASSAILABLE COLLATERALLY FOR ERRORS OF LAW.

The test of jurisdiction is not a right decision, but the right to investigate, to make some decision, and to dispose of the land accordingly. Hence, in a case within its jurisdiction, the patent is as impervious to collateral attack for errors of law committed by the department as for mistakes of fact.

**4.** PATENTS TO LAND—REMEDY FOR MISTAKEN OR ERRONEOUS ISSUE.

The remedy for errors of law, as well as for mistakes of fact, in the issue of a patent to land within the jurisdiction of the department, is a direct proceeding by bill in equity to correct them.

**5.** PATENT TO LAND WITHOUT JURISDICTION OF DEPARTMENT MAY BE COLLATERALLY ASSAILED.

Land the title to which has passed from the United States before the claim on which the patent was based was initiated, land reserved from sale and disposition for military or other like purposes, land reserved by a claim under a Mexican or Spanish grant sub judice, and land for the disposition of which congress has made no provision, is not intrusted to the disposition of the land department, and its patents to such land are void on their face, and may be collaterally attacked in an action at law.

**6.** LAND DEPARTMENT—PRESUMPTION OF JURISDICTION AND OF VALIDITY OF PATENT.

The general rule is that public lands are subject to the disposition of the land department. A patent of the United States, therefore, is presumptive evidence that the department had jurisdiction, and that it rightfully exercised it, and if there could have been any state of facts which, under the laws, would have given the department jurisdiction to dispose of the land described in the patent, the presumption is that this state of facts existed, and the patent is not open to collateral attack.

**7.** LAND IN INDIAN RESERVATION NOT SUBJECT TO PUBLIC LAND LAWS.

Land reserved by a treaty or act of congress for the exclusive occupancy of Indian tribes is not a part of the public lands, and until the Indian title is extinguished no one but congress can initiate any preferential right upon or restrict the nation's power to dispose of it.

**8.** SAME.

The act of the legislature of Dakota Territory of March 7, 1885, including a portion of an Indian reservation in the city of Chamberlain, did not withdraw this land from homestead or pre-emption entry, because it was not a part of the public lands, and was not subject to the public land laws.

**9.** PUBLIC LANDS—CONGRESS MAY DESTROY PREFERENTIAL RIGHTS TO ENTER.

The congress of the United States has the right and the power at any time before all the preliminary acts prescribed for the acquisition of title to the public lands, including the payment of the fees, have been performed, to deprive any one who has a preferred right to acquire the title of this privilege, and to confer it upon another.

**10.** PUBLIC LANDS—EFFECT OF ACT OF MARCH 2, 1889.

The act of congress of March 2, 1889 (25 Stat. 894, § 16; Id. 892, § 12; Id. 899, § 28), opened the lands therein described to homestead entry upon the extinction of the Indian title thereto.

**11.** LAND DEPARTMENT—JURISDICTION.

The land department had jurisdiction to hear and determine the claims of homesteaders and town site claimants to the land described in the act of the Dakota legislature of March 7, 1885, under the act of congress

---

[1] Conclusiveness of decisions of land department, see notes to Hartman v. Warren, 22 C. C. A. 38; Carson City Gold & Silver Min. Co. v. North Star Min. Co., 28 C. C. A. 344.

of March 2, 1889, and the public land laws of the United States, and to issue patents therefor in accordance with its decisions. Such patents evidence the legal title to the lands, and are impervious to collateral attack.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of South Dakota.

George H. King brought an action of ejectment in the circuit court of the United States for the district of South Dakota against M. McAndrews, Charles H. Pease, L. C. Rush, and William Lawson to recover possession of lots 3 and 4 and the S. E. ¼ of the S. W. ¼ of section 10, in township 104, of range 71 W., of the fifth principal meridian. He alleged in his complaint that he was the owner and entitled to the possession of the land, and that the defendants wrongfully withheld it from him. The defendants denied the title of the plaintiff, admitted their possession, and alleged that the land was a part of the selected site of a town or city when it first became subject to entry, and that the plaintiff's title consisted of a void patent issued to Henry J. King on July 6, 1899. The plaintiff filed a replication, in which he denied the averments of the answer. At the trial he offered his patent in evidence, and the court sustained the objection to it that it was void because the land it described was within the corporate limits of the city of Chamberlain when the patentee entered it. This ruling defeated the claim of the plaintiff, and a verdict and judgment in favor of the defendants were rendered by direction of the court. These rulings of the trial court are challenged by this writ of error. The learned judge who made them delivered an opinion upon a motion for a new trial of this action, in which he stated the reasons which led him to his conclusions, and this opinion is published in 104 Fed. 430.

John H. King (S. H. Wright and George H. King, on the brief), for plaintiff in error.

John D. Rivers, for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The only complaint of the trial of this case is that, in the absence of any bill in equity or direct proceeding to avoid the plaintiff's patent or to charge the legal title under it with a trust in favor of the defendants, the circuit court held it void on a collateral attack in an action at law. It presents the old question, so often discussed and decided by the supreme court, when is a patent of the United States open to indirect attack? When is it void on its face? In U. S. v. Winona & St. P. R. Co., 67 Fed. 948, 954, 959, 15 C. C. A. 96, 102, 107, 32 U. S. App. 272, 281, 289, in U. S. v. Northern Pac. R. Co., 95 Fed. 864, 870, 37 C. C. A. 290, 296, and in James v. Iron Co., 46 C. C. A. 476, 107 Fed. 597, 600, this court had occasion to consider this question in cases of grave moment, to review, digest, and analyze the decisions of the supreme court upon it, and to deduce from them and announce the principles which, in our opinion, those decisions have established. The discussion of the question, and the review and analysis of those decisions, will be found in the opinion in the case first cited, and it would be a work of supererogation to repeat them here. Our decisions in that case

and in the case of U. S. v. Northern Pac. R. Co., 95 Fed. 864, 870, 37 C. C. A. 290, 296, were reviewed and affirmed by the supreme court without any criticism of the views expressed or of the rules announced in those cases, so that the assumption may safely be indulged that they have received the approval of that court. U. S. v. Winona & St. P. R. Co., 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789; U. S. v. Northern Pac. R. Co., 177 U. S. 435, 20 Sup. Ct. 706, 44 L. Ed. 836. These are the rules and principles which this court deduced from the decisions of the supreme court upon this issue:

The land department of the United States, including in that term the secretary of the interior, the commissioner of the general land office, and their subordinate officers, constitutes a special tribunal, vested with judicial power to hear and determine the claims of all parties to the public lands which it is authorized to dispose of, and with power to execute its judgments by conveyances to the parties entitled to them. 9 Stat. 395, c. 108, § 3 (Rev. St. § 441); 5 Stat. c. 352, § 1 (Rev. St. § 453).

A patent of land within its jurisdiction, issued by the land department, is the judgment of that tribunal, and a conveyance of the legal title to the land to the patentee in execution of the judgment.

When such a patent to land within the jurisdiction of the department is issued, it is, like the judgments of other judicial tribunals, impervious to collateral attack.

The test of the jurisdiction of this tribunal is the true answer to the question, had the department the power to hear and determine the claims of the applicants of the land and to dispose of it in accordance with its decision? If that question can be answered in the affirmative, the land department had jurisdiction of the case, and the patent which evidences its decision conveys the legal title, and is impervious to collateral attack. If it must be answered in the negative, then its conveyance is void, and is as vulnerable in a collateral action at law as in a direct proceeding in equity to avoid it.

Land the title to which has passed from the United States before the claim on which the patent is based was initiated, land reserved from sale and disposition for military or other like purposes, land reserved by a claim under a Mexican or Spanish grant sub judice, and land for the disposition of which congress has made no provision, is not intrusted to the disposition of the land department, is not within its jurisdiction, and hence its patents for such land are void on their face, and may be collaterally attacked in an action at law. Polk v. Wendal, 9 Cranch, 87, 3 L. Ed. 665; Stoddard v. Chambers, 2 How. 284, 318, 11 L. Ed. 269; Easton v. Salisbury, 21 How. 426, 432, 16 L. Ed. 426; Reichart v. Felps, 6 Wall. 160, 18 L. Ed. 849; Best v. Polk, 18 Wall. 112, 117, 118, 21 L. Ed. 805; Sherman v. Buick, 93 U. S. 209, 23 L. Ed. 849; Iron Co. v. Cunningham, 155 U. S. 354, 15 Sup. Ct. 103, 39 L. Ed. 183; Railroad Co. v. Forsythe, 159 U. S. 46, 53, 15 Sup. Ct. 1020, 40 L. Ed. 71; Wright v. Roseberry, 121 U. S. 488, 519, 7 Sup. Ct. 985, 30 L. Ed. 1039; Davis v. Weibbold, 139 U. S. 507, 11 Sup. Ct. 628, 35 L. Ed. 238; Doolan v. Carr, 125 U. S. 618, 624, 632, 8 Sup. Ct. 1228,

31 L. Ed. 844; Wilcox v. Jackson, 13 Pet. 499, 511, 10 L. Ed. 264; Morton v. Nebraska, 21 Wall. 660, 674, 22 L. Ed. 639.

But land which the department is vested with the power and charged with the duty to hear and decide the claims of applicants for, and to dispose of in accordance with its decision, is within its jurisdiction, and its patent of such land conveys the legal title to it, and is impervious to collateral attack, whether its decision is right or wrong. Minter v. Crommelin, 18 How. 87, 89, 15 L. Ed. 279; U. S. v. Schurz, 102 U. S. 378, 401, 26 L. Ed. 167; Moore v. Robbins, 96 U. S. 530, 533, 24 L. Ed. 848; French v. Fyan, 93 U. S. 169, 172, 23 L. Ed. 812; Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800; Refining Co. v. Kemp, 104 U. S. 636, 645–647, 26 L. Ed. 875; Steel v. Refining Co., 106 U. S. 447, 450, 452, 1 Sup. Ct. 389, 27 L. Ed. 226; Lee v. Johnson, 116 U. S. 48, 49, 6 Sup. Ct. 249, 29 L. Ed. 570; Heath v. Wallace, 138 U. S. 573, 585, 11 Sup. Ct. 380, 34 L. Ed. 1063; Knight v. Association, 142 U. S. 161, 212, 12 Sup. Ct. 258, 35 L. Ed. 974; Noble v. Railroad Co., 147 U. S. 174, 13 Sup. Ct. 271, 37 L. Ed. 123; Barden v. Railroad Co., 154 U. S. 288, 327, 14 Sup. Ct. 1030, 1038, 38 L. Ed. 992, 1001. In the case last cited the supreme court said:

"It is the established doctrine, expressed in numerous decisions of this court, that wherever congress has provided for the disposition of any portion of the public lands, of a particular character, and authorizes the officers of the land department to issue a patent for such land upon ascertainment of certain facts, that department has jurisdiction to inquire into and determine as to the existence of such facts, and, in the absence of fraud, imposition, or mistake, its determination is conclusive against collateral attack."

The test of jurisdiction is not right decision, but the right to enter upon the inquiry and to make some decision. Foltz v. Railroad Co., 60 Fed. 316, 318, 8 C. C. A. 635, 637, 19 U. S. App. 576, 581; U. S. v. Winona & St. P. R. Co., 67 Fed. 959, 15 C. C. A. 107, 32 U. S. App. 289. Hence a patent evidencing an erroneous decision of a question of law or a mistaken determination of an issue of fact, which the department was vested with the power, and charged with the duty, to decide, is as impervious to collateral attack as one which is the result of correct conclusions.

The remedy for an error of law in the action of the department regarding the title to land intrusted to its disposition is by a direct proceeding by a bill in equity to correct it. James v. Iron Co., 46 C. C. A. 476, 107 Fed. 597, 600; Bogan v. Mortgage Co., 63 Fed. 192, 195, 11 C. C. A. 128, 130, 27 U. S. App. 346, 350; U. S. v. Winona & St. P. R. Co., 67 Fed. 948, 958; 15 C. C. A. 96, 106, 32 U. S. App. 272, 288; U. S. v. Northern Pac. R. Co., 95 Fed. 864, 870, 37 C. C. A. 290, 296; Cunningham v. Ashley, 14 How. 377, 14 L. Ed. 462; Barnard v. Ashley, 18 How. 43, 15 L. Ed. 285; Garland v. Wynn, 20 How. 6, 15 L. Ed. 801; Lytle v. Arkansas, 22 How. 193, 16 L. Ed. 306; Lindsey v. Hawes, 2 Black, 554, 562, 17 L. Ed. 265; Johnson v. Towsley, 13 Wall. 72, 85, 20 L. Ed. 485; Moore v. Robbins, 96 U. S. 530, 538, 24 L. Ed. 848; Bernier v. Bernier, 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152.

The aggrieved party has a like remedy for the wrongful issue of a

patent upon a misapprehension of the facts, which is induced by fraud or gross mistake. Gonzales v. French, 164 U. S. 338, 342, 17 Sup. Ct. 102, 41 L. Ed. 458; Root v. Shields, 1 Woolw. 340, 359, Fed. Cas. No. 12,038; U. S. v. Coos Bay Wagon-Road Co. (C. C.) 89 Fed. 151; U. S. v. Northern Pac. R. Co., 95 Fed. 864, 870, 882, 37 C. C. A. 290, 296, 308; U. S. v. Atherton, 102 U. S. 372, 374, 26 L. Ed. 213; U. S. v. Budd, 144 U. S. 154, 167, 168, 12 Sup. Ct. 375, 36 L. Ed. 384; U. S. v. Mackintosh, 85 Fed. 333, 336, 29 C. C. A. 176, 179, 56 U. S. App. 483, 490; U. S. v. Throckmorton, 98 U. S. 61, 66, 68, 25 L. Ed. 93; Marquez v. Frisbie, 101 U. S. 473, 476, 25 L. Ed. 800; Steel v. Refining Co., 106 U. S. 447, 451, 27 L. Ed. 226; French v. Fyan, 93 U. S. 169, 172, 23 L. Ed. 812; Ehrhardt v. Hogaboom, 115 U. S. 67, 69, 5 Sup. Ct. 1157, 29 L. Ed. 346; Heath v. Wallace, 138 U. S. 573, 575, 11 Sup. Ct. 380, 34 L. Ed. 1063; Barden v. Railroad Co., 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992.

These established principles have been restated and these authorities have been again cited because they control the disposition of the case in hand, and because counsel for the defendants seem to be impressed with the view that every decision· by the land department of the many grave and complicated issues which condition the rightful ·issue of a patent is a mere ministerial act, open to collateral attack for every error of law into which the officers of that department may fall, in every action at law in which the title under the patent is involved. 104 Fed. 432. Such is not the law. The decisions of that department are judicial acts. The patents it issues are judgments of a quasi judicial tribunal. In cases within its jurisdiction they are presumptively right, and as impervious to collateral attack for errors of law or for mistakes of fact as the judgments of the courts, and all cases are within the jurisdiction of this department in which congress has intrusted to it the determination of the rights of the claimants, and the disposition of the land in accordance with its decision.

The real question in this case, therefore, is, was the determination of the rights of the claimants to the land here in controversy, and the issue of a patent to it in consonance with that decision, intrusted to this department? The contention of the counsel for the defendants is that it was not, because the land was within the limits of an incorporated city when it was first entered as a homestead by the patentee. The record of the trial of the case does not disclose the facts which conditioned the decision and judgment of the department, which the patent evidences, that King was entitled to the land. But the general rule is that the disposition of the public lands of the United States is intrusted to this department, and the patent itself is presumptive evidence both that the department had the jurisdiction to decide whether or not the patentee was entitled to it, and that its decision of that question was right. It follows that, if there might have been any state of facts which would have given the department jurisdiction of this case and the power to issue a patent to this land under the acts of congress, the presumption is that such a state of facts existed, and that the

department had jurisdiction of the case. Upon this subject the supreme court said in Refining Co. v. Kemp, 104 U. S., at page 646, 26 L. Ed., at page 878, that "a patent, in a court of law, is conclusive as to all matters properly determinable by the land department, when its action is within the scope of its authority; that is, when it has jurisdiction under the law to convey the land. In that court the patent is unassailable for mere errors of judgment. Indeed, the doctrine as to the regularity and validity of its acts, where it has jurisdiction, goes so far that if in any circumstances, under existing law, a patent would be held valid, it will be presumed that such circumstances existed." And at page 645, 104 U. S., and page 878, 26 L. Ed., it said, in speaking of the authority of the department to hear claims for and to dispose of public land, that "when the authority depends upon the existence of particular facts, or upon the performance of certain antecedent acts, and it is the duty of the land department to ascertain whether the facts exist, or the acts have been performed, its determination is as conclusive of the existence of the authority against any collateral attack, as is its determination upon any other matter properly submitted to its decision." The patent in this case then comes buttressed with the presumption that the state of facts most favorable to the jurisdiction of the department existed and was found to exist by that tribunal when it awarded the land and issued the patent to King, and the question in the case becomes: Could there have been any state of facts which would have given the department jurisdiction to dispose of this land under the law? For the purpose of answering this question, the presumption will be indulged that the state of facts existed which the opinions of the various officers of the land department indicated in the course of the protracted litigation in that tribunal which resulted in the award of the land and the issue of the patent to King, and on that assumption this case will be stated. King v. Railway Co., 14 Land Dec. Dep. Int. 167; City of Chamberlain v. King, 24 Land Dec. Dep. Int. 526; City of Chamberlain v. King, 25 Land Dec. Dep. Int. 249.

The land in controversy is a part of a tract of 188 acres situated on the east bank of the Missouri river, in the state of South Dakota. In the year 1880 this tract was a part of the Crow Creek and Winnebago Indian reservation, "set apart for the absolute and undisturbed use and occupation of the Indians." Treaty with Sioux Tribes, April 29, 1868 (15 Stat. 635, 636). In that year the Chicago, Milwaukee & St. Paul Railway Company made an agreement with these Indians to purchase from them this 188 acres and other lands, and this contract was approved by the secretary of the interior on January 3, 1881. On February 27, 1885, President Arthur issued an executive order to the effect that this land was withdrawn from the Indian reservation, was restored to the public domain, and was open to settlement under the land laws. Thereupon the patentee, Henry J. King, immediately made a settlement on the land described in his patent, and has occupied it ever since. On March 2, 1885, he applied to the local land officers to enter the land as a homestead, and tendered payment of the fees, but his application was refused

because the officers had not received official notice that the land had been restored to the public domain. On March 7, 1885, the legislature of South Dakota passed an act including this land in the city of Chamberlain, a municipality which had been previously incorporated. On April 17, 1885, President Cleveland issued a proclamation that the executive order of February 27, 1885, was void, as it was in fact, because it was in violation of the treaty with the Sioux Indians. On March 2, 1889, congress passed an act to divide a portion of the reservation of the Sioux Indians in Dakota into separate reservations, and to extinguish the Indian title to the remainder. 25 Stat. 888, c. 405. By section 16 of that act it declared that the right of the St. Paul Railway Company to acquire and hold this land under its contract with the Indians was confirmed upon condition that it constructed its railroad and complied with certain other requirements of that act in the time and manner there specified; that none of the lands covered by this agreement of the railway company should ever be used for town site purposes; and that, in case that company failed to comply with the requirements of the act, the land should be forfeited to the United States, and that "whenever such forfeiture occurs the secretary of the interior shall ascertain the fact and give due notice thereof to the local land officers, and thereupon the lands so forfeited shall be open to homestead entry under the provisions of this act." 25 Stat. 894, § 16. By section 12 of the act it provided that all the lands within the Indian reservation adapted to agriculture, which should be sold or released to the United States by any Indian tribe, under the act should be held by the United States for the sole purpose of securing homes to actual settlers, and should be disposed of to them in tracts not exceeding 160 acres to any one person, and that no patents should issue therefor except to persons taking the same as homesteads, or to their heirs, after the expiration of five years' occupancy thereof as such homesteads. Page 892. And by section 23 it provided that all persons who between the 27th day of February, 1885, and the 17th day of April, 1885, had entered upon any part of the Crow Creek and Winnebago reservation, and made settlements and improvements thereon, with intent to enter the same under the homestead or pre-emption laws of the United States, should have a preferred right, for a period of 90 days after the lands within that reservation were restored to the public domain, to re-enter upon their claims, and procure title thereto under the homestead or pre-emption laws of the United States. 25 Stat. 898. King had settled upon and improved this land within the time specified in this last section, with intent to enter it as a homestead, so that he fell within its provisions; but no one had settled upon or improved the land described in his patent, or done any other acts upon this land in support of the claim of the town site, between February 27 and April 17, 1885. The Indian tribes accepted the terms of the act of March 2, 1889, and under it their title to the land here in dispute was extinguished. On February 10, 1890, the president announced the fact that the Indians had accepted the terms of the act of 1889, and declared that this release did not

affect the reserved rights of the St. Paul Railway Company to the lands that are here in dispute. The railway company subsequently failed to comply with the terms of the act of 1889, and on December 5, 1894, President Cleveland issued a proclamation wherein he declared "that the said lands granted for right of way and station purposes, to wit, that tract of land known as lots 2, 3, and 4, and the S. E. ¼ of the S. W. ¼, of Sec. 10, and lots 1 and 2 in sec. 5, Tp. 104 N., R. 71 [a tract which includes the lands covered by this patent and a certain other tract], * * * are forfeited to the United States, and will be subject to entry under the homestead laws, as provided by said act of March 2, 1889, whenever the secretary of the interior shall give due notice to the local officers of this declaration of forfeiture." 19 Land Dec. 431. The secretary thereupon gave notice of the forfeiture, so that the lands first became open to entry under the provisions of the act of 1889, on April 15, 1895. On that day King applied to enter the land described in his patent as his homestead, and immediately thereafter, and on the same day, J. W. Orcutt, as mayor of the city of Chamberlain, applied to enter it as a town site in behalf of the defendants and others who were then occupying it. The litigation thus instituted in the land department went to a hearing on its merits before the local land officers, before the commissioner of the general land office, and before the secretary of the interior. All these officers decided against the claimants of the town site. City of Chamberlain v. King, 24 Land Dec. Dep. Int. 526. Upon an application for review, these decisions were again considered by the secretary, and affirmed, and finally, on July 16, 1899, the patent was issued to King in accordance with the uniform decisions of all the officers of the land department upon the questions of law and of fact which the contest between King and the claimants of the town site had presented. City of Chamberlain v. King, 25 Land Dec. Dep. Int. 249.

In this state of the case, counsel for the defendants insist that all this litigation was fruitless, that the department had no power to decide that King was entitled to the land, that its action in rendering that decision was without jurisdiction, and that its patent is not evidence of title, and is void, in the face of a collateral attack, in an action at law. This is his argument: First, under the general homestead act as it stood prior to March 3, 1891, lands within the limits of an incorporated town were not subject to homestead entry, unless otherwise provided by law. Act Sept. 4, 1841 (5 Stat. 455; Rev. St. §§ 2258, 2289). While the act of March 3, 1891 (26 Stat. 1095), repealed the pre-emption law, including section 2258, Rev. St., and struck out the restriction of homestead entries to lands subject to pre-emption, found in section 2289, it is insisted that it was not the purpose or effect of that act to open lands within the limits of an incorporated city to homestead entry. Second, the act of the legislature of the territory of Dakota of March 7, 1885, included the land described in this patent within the incorporated limits of the city of Chamberlain. Third, therefore, this land was not subject to entry as a homestead on April 15, 1895, the land

department had no jurisdiction to hear or decide the issues between the homesteader and the town site claimants, and its decision and patent are void. The major premise of this syllogism is vigorously assailed by counsel for the plaintiff. He stoutly maintains that since the act of March 3, 1891, which expressly struck out of the homestead law the restriction of entries under it to lands subject to pre-emption, and which repealed the pre-emption law, lands within the limits of an incorporated city are open to homestead entries to the same extent as other public lands. It is certain that the right of homestead entry was not farther restricted or limited by the act of 1891. Whether or not it was extended is a question which it is unnecessary to determine in this case, and upon which no opinion is expressed. Before its amendment by the act of 1891, the homestead law restricted the right to enter under it to public lands subject to pre-emption (section 2289), and the pre-emption law provided that "the following classes of lands, unless otherwise provided by law, shall not be subject to the right of pre-emption. * * * Second. Lands included within the limits of an incorporated town or selected as the site of a city or town." Section 2258. For the purposes of this decision, the proposition will be conceded that the restriction upon homestead entries, within the limits of an incorporated town, remained the same after the passage of the act of 1891 that it was before its enactment. But neither the minor premise of the syllogism of counsel for the defendants, nor its conclusion, can be admitted, and that for many reasons, some of which will now be stated.

1. This land was reserved for the Sioux tribes of Indians under the treaty of 1868, on March 7, 1885, when the act of the territorial legislature, including it within the limits of the city of Chamberlain, was passed. It was not a part of "the public lands." It was not subject to the acts of congress relating to town sites, pre-emptions, homesteads, or other claims upon public lands, and until the Indian title was extinguished, and the land was restored to the public domain, no act of any state or territorial legislature, or of any municipal or other corporation, or of any private party, could restrict the nation's power to dispose of it, or initiate any preferential right or claim to it, in the absence of an act of congress expressly authorizing such action. Rev. St. §§ 2380, 2394; Leavenworth, L. & G. R. Co. v. U. S., 92 U. S. 733, 742, 745, 23 L. Ed. 634; Buttz v. Railroad Co., 119 U. S. 55, 66, 70, 7 Sup. Ct. 100, 30 L. Ed. 330; Wilcox v. Jackson, 13 Pet. 498, 513, 10 L. Ed. 264; Bardon v. Railroad Co., 145 U. S. 535, 539, 542, 12 Sup. Ct. 856, 36 L. Ed. 806; Keith v. Town Site of Grand Junction, 3 Land Dec. Dep. Int. 356, 358. This proposition has been the conceded law of the land ever since the present system of disposing of the public lands was adopted. No authorities in conflict with it have been cited. A diligent search through the decisions of the courts has disclosed none. In Leavenworth, L. & G. R. Co. v. U. S., 92 U. S. 733, 742, 745, 23 L. Ed. 634, in the year 1875, and again in Bardon v. Railroad Co., 145 U. S. 542, 12 Sup. Ct. 856, 36 L. Ed. 806 (1892), the supreme court announced the rule, to which it has uniformly adhered, that

lands within the limits of an Indian reservation are excluded "from disposal as the public lands are usually disposed of," and are exempt from all congressional legislation, unless there is an express declaration therein to the contrary. The entire beneficial ownership of such lands was in the Indians. Nothing but the naked legal title in trust for them was in the United States. Of the Indians' interest in such land, the supreme court has repeatedly said: "For all practical purposes they owned it; as the actual right of possession, the only thing they deemed of value was secured to them by treaty until they should elect to surrender it to the United States." Leavenworth, L. & G. R. Co. v. U. S., 92 U. S. 742, 23 L. Ed. 634; Bardon v. Railroad Co., 145 U. S. 535, 543, 12 Sup. Ct. 856, 36 L. Ed. 806.

The contention of counsel for the defendants, that a state or territorial legislature may extend the limits of a town or city over a part of "the public lands" so as to segregate that part from the public domain, and to reserve it from pre-emption and homestead entries, is not disputed. The cases of Root v. Shields, 1 Woolw. 358, 359, Fed. Cas. No. 12,038; Burfenning v. Railway Co., 46 Minn. 20, 48 N. W. 444; Id., 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 175; Alger v. Hill (Wash.) 27 Pac. 922, 923; Lewis v. Town of Seattle, 8 Copp. Landowner, 143; City of Grantsville v. McBride, 2 Copp. Pub. Land Laws (1882) 1302; City of Seattle v. McAleer, 2 Copp. Pub. Land Laws (1882) 1306, 1309, 1311; and Town Site of Concordia v. Linney, 2 Copp, Pub. Land Laws (1882) 1313,—which are cited for the defendants, go no farther. None of them hold that the act of any legislature can initiate a claim to, or affect the future disposition of, any land which has been theretofore reserved and appropriated to the occupancy of the Indians, of the army, of the navy, or of any other party, and which has thereby ceased to be a part of the public domain. For this reason, these authorities are neither decisive nor persuasive upon the question which the act of the Dakota legislature presents.

The claim of counsel for defendants, that state and territorial legislatures may extend their civil and criminal laws over the occupants of portions of Indian reservations by including them within incorporated towns or cities or by other legislation, so that crimes committed there may be punished, taxes collected, and rights of property protected by the courts, is not material to the issue in this case, and it is accordingly conceded. Nothing more is held in Langford v. Monteith, 102 U. S. 145, 147, 26 L. Ed. 43; Railway Co. v. Fisher, 116 U. S. 28, 6 Sup. Ct. 246, 29 L. Ed. 542; Draper v. U. S., 164 U. S. 240, 17 Sup. Ct. 107, 41 L. Ed. 419; State v. Doxtater, 47 Wis. 278, 291, 2 N. W. 439; and Schriber v. Town of Langdale, 66 Wis. 616, 29 N. W. 547, 554,—which have been cited for the defendants. Under this admission, the act of the legislature of Dakota was not void. It extended over the occupants of this land the municipal laws of the city of Chamberlain, and empowered that city to protect the rights of persons and of property there. But it had no more effect upon the present or prospective claims of parties to the title of the land than it would

have had if the title to it had been held by private citizens. An act of the legislature which includes public land in the limits of a town does not segregate it from the public domain, and withdraw it from homestead entry by its own force. It does so, as Mr. Justice Miller has well said in the leading case of Root v. Shields, 1 Woolw. 340, 359, Fed. Cas. No. 12,038, by virtue of the congressional provision only. Remove the cause, and the effect is not produced. The congressional provision had no application to, or effect upon, the title or claims to lands appropriated to Indians or military reservations, because they were not a part of "the public lands." Hence an act of the legislature of a territory which, derived all its powers to affect such claims and titles from such a provision was devoid of all effect upon them.

2. If the position just stated were untenable, and if the act of the Dakota legislature segregated this land from the Indian reservation, and withdrew it from homestead entry, the act of congress of March 2, 1889, restored it. If it was withdrawn, it was by virtue of and subject to the terms and limitations of the acts of congress. Rev. St. §§ 2258, 2289. Those terms were that by its incorporation into a town or city it was withdrawn from homestead entry, "unless otherwise provided by law." It was otherwise provided by law. The act of 1889 provided (1) that these specific lands which were then subject to the contract between the Indians and the St. Paul Railway Company should not "be used, directly or indirectly, for town site purposes," and that whenever they were forfeited by the railway company "the lands so forfeited shall be open to homestead entry under the provisions of this act" (25 Stat. 894, § 16); (2) that all the lands sold or released by the Indians under that act which were adapted for agriculture should be disposed of to actual and bona fide settlers in tracts not exceeding 160 acres each, and that no patent should issue for any tract, except to the person taking the same as a homestead (25 Stat. 892, § 12); and (3) that the persons who made settlements and actual improvements, and located or attempted to locate homesteads, pre-emptions, and town site claims on any of these lands, between February 27 and April 17, 1885, with intent to enter them under the homestead or pre-emption laws, should have a preference right to acquire the lands so located for 90 days after the land should be restored to the public domain (25 Stat. 898, § 23). Here were repeated enactments of congress subsequent to the act of the Dakota legislature to the effect that this land should be subject to homestead entry.

3. If the withdrawal of the land from homestead entry was effected by the territorial act including it within the corporate limits of the city of Chamberlain, that act gave the claimants of the town site no vested rights against the United States, and the nation was still free to dispose of the land to others notwithstanding that withdrawal. Congress has the right and the power at any time before all the preliminary acts prescribed by the laws for the acquisition of the title to its lands, including the payment of the fees, have been performed, to deprive any one who has a preferred right to acquire the title of this privilege, and to confer it upon another. Railroad

Co. v. Smith, 171 U. S. 260, 269, 18 Sup. Ct. 794, 43 L. Ed. 157; Frisbie v. Whitney, 9 Wall. 187, 189, 193, 196, 19 L. Ed. 668; Hutchings v. Low, 15 Wall. 77, 87, 88, 93, 21 L. Ed. 82; Buxton v. Traver, 130 U. S. 232, 236, 9 Sup. Ct. 509, 32 L. Ed. 920; U. S. v. Holmes (C. C.) 105 Fed. 41, 44; Campbell v. Wade, 132 U. S. 34, 38, 10 Sup. Ct. 9, 33 L. Ed. 240; Wagstaff v. Collins, 97 Fed. 3, 9, 38 C. C. A. 19, 24, 25; Emblen v. Land Co., 102 Fed. 559, 561, 563, 42 C. C. A. 499, 501, 503; Norton v. Evans, 82 Fed. 804, 27 C. C. A. 168, 49 U. S. App. 669. The claimants to the town site had performed none of the requisite preliminary acts to entitle them to enter it when congress passed the act of March 2, 1889. By that act, as has been seen, it exercised its power to give the preferred right to acquire this land to those who sought to enter it as their homesteads, and there is nothing in the prior act of the Dakota legislature which can limit the terms or destroy the effect of this later act of congress upon a subject which was within its exclusive jurisdiction,—the disposition of the lands of the nation.

The indisputable rules and principles which have now been adverted to compel the conclusion that the act of the legislature of Dakota did not irrevocably withdraw the land which was subsequently patented to King from the jurisdiction and disposition of the land department. When on April 15, 1895, it was restored to "the public lands," under the provisions of the act of March 2, 1889, and the patentee and the claimants of the town site applied to the land department for permission to enter it and for a conveyance of it, the acts of congress had vested in that department the power, and had imposed upon it the duty, to hear and decide the issues whether or not this land was withdrawn from homestead entry by the territorial act of March 7, 1885, at a time when it was a part of an Indian reservation, and not a part of "the public lands"; whether or not the act of congress of March 2, 1889, prohibited its entry as a town site; whether or not that act authorized its entry as a homestead; whether or not either of the claimants made an actual settlement upon, and improvement of, the land with intent to enter it as a pre-emption or homestead or town site between February 27, 1885, and April 17, 1885, so that he acquired a preferred right to enter the land for 90 days after April 15, 1895; whether or not the homestead claimant had complied with the requisite preliminaries regarding settlement, occupation, and improvement to entitle him to enter it; whether or not the property and its occupants were such that the claimants of the town site could lawfully enter the land as such (Rev. St. §§ 2382, 2384, 2387–2389, 2393); and every other issue of law and of fact which conditioned the determination of the ultimate question whether the homesteader or the claimants of the town site were entitled to enter and to receive the patent for this land. The decision of these questions was not a ministerial act. It was the exercise of judgment,—of judicial power,—and the decision by that tribunal, evidenced by its patent to King, of the issues thus presented to it, whether right or wrong, was presumptively right, conveyed the legal title to the land, was impervious to collateral attack, and could be

successfully assailed only by a direct proceeding in equity for that purpose.

The land department was the only tribunal intrusted by congress with the power to decide these questions or with authority to dispose of this land. The claimants of the town site could have obtained title to it from no other source. They recognized this fact when they applied to this tribunal for a decision in their favor and for its patent. If the department had jurisdiction to hear and decide these questions in their favor, if it had jurisdiction to decide them at all, it had jurisdiction to decide them either way,—to determine them wrong as well as right. The test of jurisdiction is not a right decision, but the right to investigate and decide. This right was vested in the department by the public land laws of the United States. Its patent conveyed the legal title held by the government, and evidenced its judgment upon the questions presented to it, and it should have been received in evidence at the trial below and should have prevailed until it was avoided by a direct proceeding in equity for that purpose.

This conclusion has not been reached without a thoughtful reading and consideration of the opinions of the various courts in Burfenning v. Railway Co., 46 Minn. 20, 48 N. W. 444; Id., 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 175; Railroad Co. v. Forsythe, 159 U. S. 46, 61, 15 Sup. Ct. 1020, 40 L. Ed. 71; Root v. Shields, 1 Woolw. 359, Fed. Cas. No. 12,038; Wright v. Roseberry, 121 U. S. 519, 7 Sup. Ct. 985, 30 L. Ed. 1039; Deweese v. Reinhard, 165 U. S. 386, 17 Sup. Ct. 340, 41 L. Ed. 757; Morton v. Nebraska, 21 Wall. 660, 674, 22 L. Ed. 639; Riley v. Welles 154 U. S. 578, 14 Sup. Ct. 1166, 19 L. Ed. 648; U. S. v. Carpenter, 111 U. S. 347, 4 Sup. Ct. 435, 28 L. Ed. 451; U. S. v. Coos Bay Wagon Road Co. (C. C.) 89 Fed. 151; and in every other case cited by counsel for the defendants. But there is nothing in any of these authorities that is sufficient to strike down the established rule which was announced in Refining Co. v. Kemp, 104 U. S. 646, 26 L. Ed. 875, and which has been sustained by the decisions of the supreme court for nearly a century, that "a patent, in a court of law, is conclusive as to all matters properly determinable by the land department, when its action is within the scope of its authority; that is, when it has jurisdiction under the law to convey the land. In that court the patent is unassailable for mere errors of judgment." In Burfenning v. Railway Co., 46 Minn. 20, 48 N. W. 444, and Id., 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 175, in which a patent was held void in an action of ejectment because the land which it described was within the limits of an incorporated city when the claim upon which it was founded was initiated, the action was brought and tried in a court of the state of Minnesota. In that court the distinction between actions at law and suits in equity had been abolished, and an equitable defense had been made as available in an action at law as in a proceeding in equity by the statutes of that state. St. Minn. 1894, §§ 5131, 5236. Hence the defense in that action, that the patent had been issued through an error of law of the land department, was as direct a proceeding to avoid the patent as an independent suit in equity would have been in a federal court. That defense was interposed, and it was sustained. But it would not

have been available in the federal courts, because the distinction between actions at law and suits in equity is still maintained in those tribunals. In the courts of Minnesota the defense interposed to that action at law was a direct, and not a collateral, attack upon the patent. In the federal courts it would have been a collateral, and not a direct, attack, and it could not have been sustained. In Railroad Co. v. Forsythe, 159 U. S. 46, 15 Sup. Ct. 1020, 40 L. Ed. 71; Wright v. Roseberry, 121 U. S. 519, 7 Sup. Ct. 985, 30 L. Ed. 1039; Deweese v. Reinhard, 165 U. S. 386, 17 Sup. Ct. 340, 41 L. Ed. 757; Morton v. Nebraska, 21 Wall. 660, 674, 22 L. Ed. 639; and Riley v. Welles, 154 U. S. 578, 14 Sup. Ct. 1166, 19 L. Ed. 648,—the lands in question had either been granted or reserved when the claims of the patentees were initiated so that they were not subject to the disposition of the land department. Root v. Shields, 1 Woolw. 359, Fed. Cas. No. 12,038, U. S. v. Coos Bay Wagon Road Co. (C. C.) 89 Fed. 151, and U. S. v. Carpenter, 111 U. S. 347, 4 Sup. Ct. 435, 28 L. Ed. 451, were direct attacks upon patents by bills in equity for errors of law of the land department. The attack upon the patent in the case in hand was indirect and collateral, and it cannot prevail. It was an attempt to interpose an equitable defense to a legal cause of action, which is not permissible in the national courts. In this action at law the patent was conclusive evidence of title in the patentee, and that effect should have been given to it upon the trial below.

The judgment is reversed, and the case is remanded to the court below, with directions to grant a new trial.