### SANFORD, CITY MAYOR, *et al. v.* KING *et al.*

1. A decision of the Secretary of the Interior in a land contest over a homestead entry carried up to him should be sustained by the courts in the absence of clear and cogent reasons for overthrowing it.

2. Where a statute includes both a particular and also a general enactment which in its most comprehensive sense would include what is embraced in the particular one, the particular enactment must be given effect, and the general enactment must be taken to embrace only such cases within its general language as are not within the provisions of the particular enactment.

3. Act Cong. March 2, 1889, c. 405, § 21, 25 Stat. 896, restored to the public domain all lands outside of certain reservations, and provided that they should be disposed of under the homestead and town site laws. Section 16 of the same act (25 Stat. 893) expressly confirmed the rights of a certain railroad to specified lands subject to certain conditions, and provided for a forfeiture of the lands if the same should be violated, in which case they should be "open to homestead entry under the provisions of this act." Held, that where the railroad lands were forfeited they were subject to homestead and not to town site entry.

4. Where a party seeks to avail himself of a former judgment as evidence or in bar to a subsequent action, he must affirmatively show that the question which precludes relief in the second action was determined by the former one.

5. A judgment finding that defendants were lawfully in "possession" at the time of the commencement of the action does not preclude plaintiffs from asserting "ownership" of the property in a subsequent action.

(Opinion filed April 5, 1905.)

Appeal from circuit court, Brule county; Hon. FRANK B. SMITH, Judge.

Action by James W. Sanford, mayor of the city of Chamberlain, as trustee for M. McAndrews and others, against Henry J. King and others. From an order sustaining a demurrer to the complaint, plaintiffs appeal. Affirmed.

*John D. Rivers,* for appellants.

*S. H. Wright, J. E. House,* and *A. B. Chubbuck,* for respondents Henry J. King, Eliza Reynolds, and Frank S. Browne.

HANEY, J. This is an action in equity, wherein the mayor of Chamberlain seeks to have it adjudged that the defendants Henry J. King, Eliza Reynolds, and their successors in interest hold the naked legal title to certain real property in trust for certain alleged town site occupants. The appeal is from an order sustaining the demurrer to the complaint. The pleading thus assailed is voluminous. It contains many matters of which courts take judicial notice, numerous conclusions of law, and an argument in support of the plaintiffs' position. Without attempting to eliminate its redundant and irrelevant allegations, it will be assumed that these questions of law were involved in the ruling of the learned circuit court: (1) Whether certain patents were issued to the wrong parties; (2) whether defendants are estopped from asserting title to the premises by reason of former judgments of the circuit court within and for Brule county; and (3) whether several causes of action have been improperly united.

In 1880 the lands in controversy were embraced by the Great Sioux reservation, "set apart for the absolute and undisturbed occupation of the Indians." In that year the Chica-

go, Milwaukee & St. Paul Railway company made an agreement with the Indians to purchase certain lands, including those described in the complaint, which contract was confirmed by the Secretary of the Interior on January 3, 1881. When the Indians' rights were extinguished, the rights of the railway company were recognized, and continued to exist until April 15, 1895, when the land first became open to entry, and when the defendants Henry J. King and Eliza Reynolds, as homestead claimants, and the then mayor of Chamberlain, on behalf of certain alleged town-site claimants, initiated a contest before the United States Land Department, which was carried to the commissioner, thence to the secretary, by whom a rehearing was had, and which resulted in a decision awarding the lands to the homestead claimants. The contention before the department was, as it is here, that the lands were not open to homestead entry, because they were within the corporate limits of the city of Chamberlain. The department appears to have decided that the lands were not within the corporate limits, for the reason that a special act of the territorial legislature, passed in 1885, purporting to extend the boundaries of the then existing municipality, was ineffectual for that purpose. But the reasons assigned for its decision are not material. Were the lands open to homestead entry? If they were, the department did not err in so holding, however fallacious may have been the reasoning by which the right result was reached. So now the material inquiry is whether these lands were open to homestead entry, which may or may not depend on the effect of the territorial act purporting to extend the city limits. Where, as in this instance, the parties have been afforded ample opportunity to be heard, and have

exhausted every recognized means to establish their respective claims before the tribunal charged with the duty of hearing and determining such claims, its judgment should be sustained by the courts, in the absence of clear and cogent reasons for a different conclusion. The law applicable to department decisions is thus stated by Mr. Justice BREWER, speaking for the United States Supreme Court: "It has undoubtedly been affirmed over and over again that in the administration of the public land system of the United States questions of fact are for the consideration and judgment of the Land Department,' and that its judgment thereon is final. Whether, for instance, a certain tract is swamp land or not, saline land or not, mineral land or not, presents a question of fact, not resting on record, dependent on oral testimony; and it cannot be doubted that the decision of the Land Department one way or the other, in reference to these questions, is conclusive, and not open to relitigation in the courts, except in those cases of fraud, etc., which permit any determination to be re-examined. Johnson v. Towsley, 13 Wall. 72; Smelting Co. v. Kemp, 104 U. S. 636; Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. 389; Wright v. Roseberry, 121 U. S. 488, 7 Sup. Ct. 985; Heath v. Wallace, 138 U. S. 573, 11 Sup. Ct. 380; McCormick v. Hayes, 159 U. S. 332, 16 Sup. Ct. 37. But it is also equally true that when, by act of Congress, a tract of land has been reserved from homestead and pre-emption, or dedicated to any special purpose, proceedings in the Land Department in defiance of such reservation or dedication, although culminating in a patent, transfer no title and may be challenged in an action at law. In other words, the action of the Land Department cannot override the expressed will of Congress, or convey away public lands in disre-

19 S. D.—22

gard or defiance thereof. Smelting Co. v. Kemp, 104 U. S. 636, 646; Wright v. Roseberry, 121 U. S. 488, 519, 7 Sup. Ct. 985; Doolan v. Carr, 125 U. S. 618, 8 Sup. Ct. 1228; Davis' Adm'r v. Weibbold, 139 U. S. 507, 529, 11 Sup. Ct. 628; Knight v. Land Ass'n, 142 U. S. 161, 12 Sup. Ct. 258." Burfenning v. Chicago, St. P., M. & O. Ry. Co., 163 U. S. 321, 16 Sup. Ct. 1018.

What, then, was the will of Congress respecting these particular tracts of land? It possessed the power to dispose of them in any manner it deemed proper, provided the disposal did not interfere with vested rights, and none such existed when these homestead proceedings were initiated. "An act of the Legislature which includes public lands in the limits of a town does not segregate it from the public domain, and withdraw it from homestead entry by its own force. It does so, as Mr. Justice MILLER has well said in the leading case of Root v. Shields, 1 Woolw. 340, 359, Fed. Cas. No. 12,038, by virtue of the congressional provision only. Remove the cause, and the effect is not produced." King v. McAndrews, 111 Fed. 860, 50 C. C. A. 29. Therefore it does not follow, even if these lands were within the corporate limits of Chamberlain, that they could not be disposed of to homestead claimants. Section 21 of the act dividing the Great Sioux reservation, approved March 2, 1889 (25 Stat. 896, c. 405), restored to the public domain all lands therein outside of the separate reservations, except certain specified islands, which were given to certain cities, and provided that they should be disposed of to actual settlers only, under the provisions of the homestead law, and under the law relating to town sites. Section 16 of the same act (25 Stat. 893) expressly confirmed the rights of the Chi-

cago, Milwaukee & St. Paul Railway Company to certain lands, including those involved in this action, but provided that, if the company failed to perform certain prescribed conditions, "then * * * the lands granted for right of way, station grounds, or other railway purposes, as in this act provided, shall, without any further act or ceremony, be declared by proclamation of the President, forfeited, and shall, without entry or further action on the part of the United States, revert to the United States and be subject to entry under the other provisions of this act; and whenever such forfeiture occurs the Secretary of the Interior shall ascertain the fact and give due notice thereof to the local land officers, and thereupon the lands so forfeited shall be open to homestead entry under the provisions of this act." It is an old and familiar rule that where there is in the same statute a particular enactment and also a general one, which in its most comprehensive sense would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment. 26 Am. & Eng. Ency. 618. Applying this rule to the act of March 2, 1889, it is clear Congress intended that the tract of land reserved to the railway company should, if forfeited by the company, be open to entry under the homestead law, and not under the law relating to town sites. The general enactment was that all lands restored to the public domain by operation of the act should be open to entry under both laws, but the particular enactment was that the railway land, if restored to the public domain by operation of the act should be open to entry under the homestead law.

Congress was dealing with a particular tract. It might have given the railway company an unqualified grant, or have directed that upon its failure to perform the imposed conditions the land should be patented to Henry J. King and Eliza Reynolds. As it gave American Island to the city of Chamberlain, so it might have given the premises in dispute to whom it pleased. If this be so, certainly Congress could direct that the land be disposed of to homestead claimants, and not to town site occupants, notwithstanding any prior general directions regarding the disposal of lands lying within the limits of incorporated cities; and its expressed will was not disregarded by the Land Department in awarding patents to the homestead claimants.

The validity of one of these patents was involved in an action of ejectment tried by the United States Circuit Court, where it was excluded as evidence, on the ground that it was void when considered in connection with certain matters of which the court was bound to take judicial notice. King v. McAndrews, 104 Fed. 430. This ruling was subsequently reversed by the Circuit Court of Appeals, 111 Fed. 860, 50 C. C. A. 29. Though the only question actually decided by the latter court was whether the patent could be declared void on a collateral attack in an action at law, the reasoning of its able and exhaustive opinion leads irresistibly to the conclusion that the patents in this case are not vulnerable to even a direct attack in an equitable action, and as that learned court was considering substantially the same state of facts as is confessed by the demurrer in the case at bar, its construction of the federal statutes is entitled to the utmost respect, if it be not conclusive in the determination of this appeal.

The allegations of the complaint relating to estoppel by former judgments are, in substance, that the defendants Henry J. King and Eliza Reynolds each instituted an action in the circuit court within and for Brule county, wherein certain persons, named in this action, as town site-claimants, were defendants; that the plaintiff in each of those actions claimed to be the owner in fee and entitled to possession of the same premises as are involved in this action; that the defendants therein answered, denying the plaintiff's title and averring ownership in themselves; and that the following judgment was rendered in each of those actions:  "Now, on this 6th day of December, 1900, the same being the third day of the regular December term of this court, this cause having been regularly reached for trial, come on for hearing to the court, a jury having been waived by the defendants in open court, and by the plaintiff in failing to appear at the trial either in person or by attorney, wherefore the court, having inspected the record, and being fully advised in the premises, finds that the said defendants were, at the commencement of this action, and are still, lawfully in possession of said lands described in plaintiff's complaint; wherefore, upon motion of John D. Rivers, attorney for defendants, it is ordered that the plaintiff's complaint be, and the same is hereby, dismissed, and that the said defendants have and recover of the said plaintiff thier costs herein taxed at $————.  By the Court.  FRANK B. SMITH, Judge."  Only such issues as were actually litigated in the former actions would be available by way of estoppel in the present suit under any circumstances.  Selbie v. Graham, 18 S. D. 365, 100 N. W. 755.  Where a party seeks to avail himself of a former judgment as conclusive evidence, or as a bar to a subsequent action,

he must affirmatively show that the question which precludes relief in the second action was determined by the former one. Selbie v. Graham, supra. Here it appears on the face of the former judgments that the circuit court did nothing more than dismiss for failure to prosecute. Neither plaintiffs' complaints nor their causes of action were dismissed on their merits. Defendants were adjudged to be entitled to nothing except costs and disbursements. It may be difficult to understand how an inspection of the record, which consisted of the summons and pleadings, could justify a finding that the defendants were lawfully in possession when the former actions were commenced and when they were called for trial, if the right of possession was an issue in such action; but, assuming that the right of possession was thus established, as between the parties to those actions, its determination does not preclude the plaintiffs therein from asserting ownership in the present action, for the very obvious reason, if no other, that actual possession and right of possession may exist entirely independent of ownership. As the complaint does not state facts sufficient to constitute a cause of action, the demurrer was properly sustained, and the objection as to several causes of action being improperly united requires no consideration.

The order appealed from is affirmed.