DeLAND ET UX. v. DAY & SON.

1. **Homestead:** PRE-EMPTION: PUBLIC LANDS. The purchase of the improvements of a pre-emptor, and the subsequent occupancy of the land by the purchaser, does not give to it the character of a homestead.

2. ———: ———: CONVEYANCE. Nor can one acquire a homestead right by furnishing the money for the purchase of the improvements of another, who subsequently conveys to him, nor by a conveyance from a pre-emptor. The pre-emptor can only acquire title for himself, and cannot convey to another any interest acquired by pre-emption alone.

*Appeal from Osceola Circuit Court.*

THURSDAY, DECEMBER 7.

THE plaintiffs bring this action to quiet their title to a certain forty acres of land, which they claim as their homestead. The court rendered a decree for plaintiffs. The defendants appeal. The material facts are stated in the opinion.

*Hill & Barclay* and *Joy & Wright,* for appellants.

*Chase & Taylor,* for appellees.

DAY, J.—The facts of this case are substantially as follows: In February, 1873, plaintiffs owned a farm in Illinois, which they sold for $4,500. The forty on which they resided, with the improvements thereon, was valued at $3,000. At this time one J. H. Winspear resided upon and had a pre-emption claim to the southwest quarter of section 12, township 99,

range 42, in Osceola county, Iowa, which includes the land in controversy.   D. M. Shuck, son-in-law of the plaintiffs, resided at Sibley in said county, and was engaged in the lumber and grain business.   In April, 1873, the plaintiff, Charles DeLand, came to Osceola county and remained three days.   Whilst there, through his son-in-law, Shuck, he purchased of Winspear his improvements on, and an abandonment or surrender of his claim to, the quarter section.   For the purpose of making payment of the purchase price, Charles DeLand delivered to Shuck a draft for $2,000, part of the avails of the homestead in Illinois.   Shuck cashed this draft, paid back to Charles DeLand $200 to bear his expenses back to Illinois, paid Winspear $1,500, and executed his note for $500, secured by mortgage, for the balance of the purchase price.   At this time Charles DeLand made arrangements to go into partnership with Shuck in the lumber and grain business.   He also selected a site for a building, drew the plans therefor, and left them with Shuck to be executed.   Charles DeLand then returned to Illinois.   Shuck went to the land office at Sioux City, filed a pre-emption claim in his own name upon the said quarter section, and moved into the small house which Winspear had erected thereon.   Shuck took charge of the erection of a dwelling house on said land, pursuant to the plan prepared by Charles DeLand, employed and paid the hands, and furnished the lumber from his yard, charging the whole expense, which was about $3,000, to the individual account of Charles DeLand.   On the 2d day of September, 1873, the plaintiffs removed with their family into the house so erected.   Shuck also occupied a part of said house, both families eating at the same table.

Shuck procured W. D. Lathrop and John Blake, on the 12th of February, 1874, to prove up, under homestead claims, the said quarter section of land.   Blake proved up the north half and Lathrop the south half of said land, and on the next day each conveyed his interest to D. M. Shuck and Charles DeLand.   The consideration paid Blake and Lathrop, which was about $300, was paid by Shuck out of the firm money and charged to DeLand.   On the 7th day of April, 1875,

DeLand v. Day & Son.

Shuck and wife conveyed their interest in said land to Charles DeLand. At the time of this conveyance DeLand agreed to pay his indebtedness to the firm, about $4,000, and to assume the firm indebtedness.

On the 13th day of July, 1873, the defendants commenced selling lumber to the firm of Shuck & DeLand. This firm, at the time that plaintiffs moved upon and commenced occupying the premises in question, owed the defendants for lumber purchased the sum of $29.65. On the 26th day of February, 1874, Shuck and DeLand executed their notes to defendants for the sum of $4,000, and secured them by a mortgage on the whole of the said southwest quarter of section twelve.

The defendants brought an action upon these notes, and to foreclose the mortgage. Shuck and DeLand answered that the notes and mortgage had been procured by fraud, and asked that they be canceled. The court set aside the notes and mortgage, and rendered a judgment against Shuck and De-Land, upon the original indebtedness, for the sum of $4,290. Execution issued upon this judgment, and was levied upon the whole of said quarter section. On the 24th day of July, 1875, the southeast quarter of said quarter section, upon which plaintiffs reside, was sold at sheriff's sale to defendants for the sum of fifteen hundred dollars, the remainder of said quarter section having been before sold on execution to other parties.

To set aside this sale, and to quiet plaintiffs' title to said forty acres, this action is brought. The court found that the property in question is plaintiffs' homestead, and that it is liable for the payment of so much of the judgment only as is based upon the indebtedness existing before the premises were occupied as a homestead.

The legal title to the property in question was not acquired until after the debt was contracted, upon which defendant's judgment was rendered. If, then, plaintiffs can hold the property as their homestead, discharged from the judgment, their right to do so must be based upon some interest which they held in the property at the time their actual occupancy commenced.

It is claimed that plaintiffs acquired an equitable interest in

the land by the purchase of Winspear's improvements, and the 1. HOMESTEAD: surrender of his pre-emption claim. Winspear pre-emption: public lands. had no interest in the land. At the most he had merely his improvements, and possession, and the right to acquire a title to the land by paying the minimum government price. *Frisbie v. Whitney*, 9 Wallace, 187.

He could transfer no greater interest than he possessed. The plaintiffs, then, acquired Winspear's improvements, which the evidence shows were worth about $350, and the right to go into possession of the premises, and file a pre-emption claim, and ultimately to acquire the title by paying the government therefor.

Settlement in person upon the public lands is essential to the right of pre-emption. Revised Statutes United States, 2. ——: ——. Sec. 2259. Charles DeLand did not settle on the conveyance. land in controversy at the time the improvements were purchased. He returned, within three days, to Illinois, and left his son-in-law, Shuck, to perfect the pre-emption. It is conclusively presumed that Charles DeLand knew the law upon the subject of pre-emption, and knew, therefore, that the pre-emption could not be made in his name. If he expected Shuck to make the pre-emption in his own name, in the interest of and in trust for the plaintiffs, then DeLand became a party to a fraud upon the government, for Sec. 2262 of the Revised Statutes provides that the pre-emptor shall make oath before the receiver or register "that he has not settled upon and improved such land to sell the same on speculation, but in good faith to appropriate it to his own exclusive use, and that he has not directly or indirectly made any agreement or contract, in any way or manner, with any person whatsoever, by which the title which he might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself."

DeLand could not have expected the entry to be made in his own name, and if he expected Shuck to make it in his name for plaintiffs' use, he intended Shuck to make a false oath and perpetrate a fraud. In such case he is within the principle of *Oaks v. Heaton*, 44 Iowa, 116.

In virtue of the pre-emption in the name of Shuck, DeLand acquired no equitable interest in the property which he could enforce as against Shuck. By furnishing the money with which the improvements were bought, he acquired a personal claim against Shuck for the money advanced. The property remained in this condition, no title from the government having been acquired, until after the debt was contracted upon which the defendants' judgment was rendered. It follows, we think, that plaintiffs acquired no interest, either legal or equitable, in the premises in controversy until after the debt was contracted, and that they cannot hold the property as a homestead, discharged of such debt.

There are other circumstances which cast suspicion upon the *bona fides* of plaintiff's claim. Notwithstanding the fact that Shuck and DeLand were in possession of the property, they procured Lathrop and Blake to obtain title thereto under homestead claims, and then to convey to Shuck and DeLand. In order to accomplish this purpose it was necessary that Lathrop and Blake each should make oath that the application was made for his exclusive use and benefit, and that his entry was made for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person. Lathrop and Blake upon making their entry conveyed to Shuck and DeLand. In the answer which Shuck and DeLand interposed in the suit upon the notes, and to foreclose the mortgage, they alleged that a part of the real estate mortgaged was the homestead of all of the defendants to that suit. This answer is altogether inconsistent with the present claim that the property in controversy was, when the debt was contracted, the homestead of plaintiffs.

The plaintiffs cannot hold the property in controversy upon the ground that the homestead in Illinois was exchanged for it. As we have seen, DeLand acquired no equitable interest in the land for the $1,800 which he advanced to Shuck. There is no proof that any more of the consideration of the sale of the Illinois homestead went into the property in controversy.

We are of opinion that the court below erred in discharging the property in controversy from the debt in question.

REVERSED.