EMBLEN v. LINCOLN LAND CO. et al.

(Circuit Court of Appeals. Eighth Circuit. April 16, 1900.)

No. 1,315.

**1.** Public Lands—Control of Disposition—Powers of Congress.
  The paramount control over the disposition of the public lands of the United States remains in congress, and the fact that a contest over the right of entry of such lands is pending before the land department, a creation of congress, and not of the constitution, does not deprive congress of such paramount control; and it may at any time, by an act passed for that purpose, withdraw such contest from the jurisdiction of the department, and itself determine the rights of the parties.

**2.** Same—Decision of Contest by Secretary—Right of Successor to Annul.
  A secretary of the interior has no power to annul a decision of his predecessor which determines the rights of the parties to a contest for entry

of public lands; such determination being a judicial act, which can only be reviewed by the courts.

**3. Same—Contest of Entry—Rights of Contestant.**

Section 2 of the act of May 14, 1880 (21 Stat. 141), giving a contestant who has paid the land-office fees, and procured the cancellation of a prior entry of public lands, a preferred right to enter the same, gives such contestant no vested rights in the land until the cancellation of the existing entry; and hence, where the decision of the land officers, so far as a contest had progressed, was adverse to the contestant, and during the pendency of the proceedings congress deprived the land department of further jurisdiction by the passage of a special act confirming the title of the entryman, the contestant acquired no vested rights in the land which a court can recognize or enforce.

**4. Same—Payment of Contest Fees.**

The payment of contest fees and costs by a contestant of an entry of public land gives him no right in the land, unless the contest results in the cancellation of the prior entry.

Appeal from the Circuit Court of the United States for the District of Nebraska.

T. J. Mahoney (E. R. Duffie, on the brief), for appellant.

J. W. Deweese (T. E. Bishop, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

PER CURIAM. George F. Emblen filed his bill of complaint in the circuit court against George F. Weed and others, the object of which was to devest out of the defendant Weed the legal title to certain lands acquired by him under a patent from the United States, issued in pursuance of an act of congress, and vest the title thereto in the complainant, and for other relief. The circuit court sustained a demurrer to the bill, and the complainant appealed. Upon a full consideration of the record and arguments at the bar, and briefs of counsel, we find the opinion of Judge SHIRAS (94 Fed. 710), who ruled the case at the circuit, contains an accurate statement of the case made by the bill; and, as his opinion sustaining the demurrer to the bill expresses the law of the case, we adopt the same as the opinion of the court:

"In the bill demurred to it is averred that on September 19, 1885, one George F. Weed made a cash pre-emption entry of the S. E. ¼ of section 22, township 2 N., of range 48 west, at the land office of the United States in the city of Denver, Colo.; that on the 4th day of October, 1888, the complainant entered a contest against this entry on the ground that the entryman, Weed, had not complied with the requirements of the law with respect to his residence on the premises, and that in fact the entry was made for speculative purposes, the intent being to establish a town thereon; that the purpose of complainant in making such contest was not only that the laws of the United States regulating cash pre-emption entries on the public lands should be complied with on part of said Weed, but that, by defeating the entry made by Weed, the complainant might be enabled to enter the land under the provisions of section 2 of chapter 89 of the statutes of the United States, approved May 14, 1880 (21 Stat. 140), which section reads as follows: 'Sec. 2. In all cases where any person has contested, paid the land office fees, and procured the cancellation of any pre-emption, homestead, or timber culture entry, he shall be notified by the register of the land office of the district in which such land is situated of such cancellation, and shall be allowed thirty days from the date of such notice to enter said lands: provided, that said register shall be entitled to a fee of one dollar for the giving of such notice, to be paid by the contestant, and not to be reported.'

It is further averred in the bill that a hearing upon the contest made by complainant against the entry made by Weed was had before the register and receiver of the land office at Denver, who on May 21, 1889, ordered a dismissal of the contest on the ground that the allegations on which the same was based were not sustained by the evidence; that thereupon the contestant, being the complainant herein, appealed to the commissioner of the general land office at Washington, as he had the right to do, and upon the hearing of the appeal the commissioner sustained the same; that thereupon George F. Weed moved before the commissioner for a rehearing on the evidence, and the officials and inhabitants of the town of Yuma, which it was shown had been located on the premises, asked leave to intervene for the protection of their rights; that the commissioner ordered a rehearing of the matter before the register and receiver; that, before this rehearing was had, a new land district was created at Akron, Colo., the land in question being within the new district thus created; that the receiver and register of the new district ordered the rehearing to take place at Akron on the 16th day of September, 1890; that the contestant did not appear at this time, but filed objections to the jurisdiction of the local offices at Akron, averring that the receiver at Akron was an interested party, being the owner of a part of the town of Yuma, under title derived from Weed, the pre-emption claimant; that the officers of the land district of Akron overruled the objections to the jurisdiction, and, upon hearing the evidence adduced on behalf of Weed, found in his favor, and dismissed the contest; that thereupon complainant appealed to the general land office at Washington, and the commissioner affirmed the action of the local land office, from which ruling complainant further appealed to the secretary of the interior, John W. Noble, by whom the action of the local officers and of the commissioner was affirmed by a decision entered January 9, 1893, and subsequently complainant filed a motion for review before Secretary Smith, upon the hearing of which it was ordered by the secretary of the interior that a rehearing of the whole contest should be had before the local officers, and in obedience to this order the register and receiver of the land office at Akron set the case for hearing on the 3d day of January, 1894, at which time Weed and the parties interested obtained a continuance of the hearing, it being charged in the bill that this continuance was obtained for the purpose of procuring the passage of an act of congress confirming the title of the original entryman, George F. Weed, which act was in fact passed and approved December 29, 1894 (28 Stat. 599), the same being in the words following: 'Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that the pre-emption cash entry numbered 4,990, of George F. Weed, made at the district land office at Denver, Colorado, on the 19th day of September, 1885, for the southeast quarter of section twenty-two (22), township two (2) north, of range forty-eight (48) west, which tract embraces the town of Yuma, Colorado, the county seat of Yuma county, Colorado, be, and the same is hereby, confirmed, and that patent of the United States issue therefor to the said Weed.' Complainant further avers that, while this bill was pending before the houses of congress, full information was furnished them of the exact status of the contest over the title to the land; that, when the bill was passed, the question of the title thereto was pending in the land department, which, under the constitution and laws of the United States, is solely charged with the duty of determining the rights of pre-emption and contestants, and that congress had no right or power to adjudicate on the question of the title to the premises in dispute, and, furthermore, that under the provisions of section 2 of the act of congress of May 14, 1880, hereinbefore cited, complainant had a vested right to enter the land upon the determination of the contest then pending between himself and Weed, and that, if complainant had been permitted to carry through the contest to a final determination, he would have succeeded in procuring a cancellation of the Weed entry; and that the passage of the act of congress above cited, and the issuance of the patents thereunder, deprived complainant of a vested right, without due process of law. It is also averred in the bill that in the year 1886 the town of Yuma was located on part of the premises, and a large number of lots have been sold to various parties named as defendants to the bill;

102 F.—36

it being charged that these parties had full knowledge of the facts when they bought under the titles based on the Weed entry. The prayer of the bill, in substance, is that the several defendants be decreed to hold the title to the property in trust for the use and benefit of complainant, and that it be decreed that the patent issued under the act of congress to George F. Weed conveyed no title in the premises, as against the rights of complainant.

"To this amended bill a demurrer is interposed on behalf of the principal defendants, thereby presenting the question whether the matters recited in the bill entitle the complainant to any relief in the premises. The bill admits that the legal title to the land has never vested in the complainant, and that by virtue of the patents issued under the provisions of the act of congress adopted December 29, 1894, the title to the realty has passed to the defendants; but the contention of complainant is that the act of congress is unconstitutional and void, for two reasons: First, that, as the contest over the title to the land was pending before the land department, congress had no jurisdiction over the land, and could not confirm the entry made by Weed; and, second, that by initiating the contest over the validity of the Weed entry, and by payment of the costs and expenses incurred in making the contest, complainant had obtained a vested right or interest in the land, of which he could not be deprived by legislative action. The denial of the power of congress to confirm the entry made by Weed, because of the pending of the contest before the land department, seems to be based, in the allegations of the bill, upon the assumption that, under the constitution and laws of the United States, the land department is solely charged with the duty of determining the rights of pre-emptors and contestants, and therefore congress cannot legislate with respect thereto. In view of the fact that the different branches of the land department are the creation of congress, and not of the constitution, it must certainly be true that the paramount control over the disposition of the public lands of the United States remains in congress, and the mere fact that a contest was pending before the tribunal created by congress to hear and determine the same did not nullify this paramount control bestowed by the constitution itself upon congress to dispose of the public lands belonging to the United States. It is within the power of congress to terminate the existence of the land department, or to declare that it shall no longer exercise jurisdiction over contests pertaining to the right to enter or pre-empt any of the public domain; and when congress passed the act of December 29, 1894, it, in effect, declared that the jurisdiction of the land department over the question of the validity of the Weed entry was at an end. It cannot be questioned that it is within the power of congress to change or terminate the jurisdiction of the district or circuit courts over given subjects, and, in the absence of a saving clause in the act, jurisdiction over pending cases ceases upon the taking effect of the act. Insurance Co. v. Ritchie, 5 Wall. 541, 18 L. Ed. 540; Railroad Co. v. Grant, 98 U. S. 398, 25 L. Ed. 231; Gurnee v. Patrick Co., 137 U. S. 141, 11 Sup. Ct. 34, 34 L. Ed. 601. The same effect must be given to a statute which intends to put an end to further contest over a disputed title. Thus, in Re Hall, 167 U. S. 38, 17 Sup. Ct. 723, 42 L. Ed. 69, it appeared that, acting under authority previously conferred on it by congress, the court of claims had rendered judgment in favor of one Hall against the District of Columbia for the sum of $8,644.19, with interest thereon from January 1, 1877. Upon appeal to the supreme court, it was held that there was error in the matter of allowing interest from that date, and the judgment was reversed, and the case was remanded to the court of claims for correction of this error. The mandate was filed in that court; but, before a new judgment had been entered in conformity with the opinion of the supreme court, congress passed an act depriving the court of claims of jurisdiction, and the supreme court held that 'the effect of the passage of the repealing act was to take away the jurisdiction of the court of claims to proceed further in those cases which were founded upon the act thus repealed. This the congress had the power to do.' The general rule applicable to cases of this character is laid down by the supreme court in Frisbie v. Whitney, 9 Wall. 187, 19 L. Ed. 668, in which it is held that, except in cases of vested rights, the power of congress to control the disposition of the public lands is absolute;

and the contention of complainant that the control of congress over the disposition of the land in dispute had ceased to exist, because there was pending before the officers of the land department a contest over the validity of the Weed entry, cannot be sustained. Do the facts averred in the bill show that complainant had obtained such a vested right in or to the land in dispute that thereby the same had ceased to be within the control of congress, —a vested right of such a character that the court can enforce it by a decree conveying the title of the land to complainant?

"The history of the case, as recited in the bill, shows that the decision of the register and receiver at Akron, dismissing complainant's contest and affirming the validity of the Weed entry, had, upon appeal, been confirmed by the commissioner at Washington, and on appeal had been finally confirmed by the secretary of the interior, John W. Noble, under date of January 9, 1893. The averments of the bill further show that, after John W. Noble had been succeeded in office by Secretary Smith, a petition for a review of the order made by Secretary Noble was filed in the office of the secretary of the interior, and was by him entertained and granted, and the case was sent back to the local land office for a further hearing on the facts. What effect on the rights of the parties had this order granted by Secretary Smith, whereby it was sought to nullify and set aside the final judgment of the land department upon the question of the validity of the Weed entry, evidenced by the order of Secretary Noble confirming, on appeal, the action of the commissioner of the general land office, which in turn confirmed the decision and findings of the register and receiver? Is it open to each succeeding secretary of the interior to rehear cases decided by his predecessor in office? In Noble v. Railroad Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123, it is said: 'A revocation of the approval of the secretary of the interior, however, by his successor in office, was an attempt to deprive the plaintiff of its property without due process of law, and was therefore void. As was said by Mr. Justice Grier in U. S. v. Stone, 2 Wall. 525, 17 L. Ed. 765, one officer of the land office is not competent to cancel or annul the act of his predecessor. That is a judicial act, and requires the judgment of a court.' It is clear from the averments of the bill that the complainant has never yet succeeded in obtaining an adjudication holding that the Weed entry is invalid; but, as already stated, it is shown that up to this time the adjudications of the land department have sustained the validity of the Weed entry. If it be held that it was open to Secretary Smith to annul the finding and decision of his predecessor in office, and to send the case back to the local land office for a rehearing upon the facts, yet, as the local officers have not taken further action, there is no decision holding the Weed entry to be invalid; and until that is done no right exists in complainant to make entry of the land, and thereby acquire an interest in the same. Under the provisions of the act of congress of May 14, 1880, upon which complainant relies, before a contestant becomes entitled to enter land, he must procure a cancellation of the pre-emption or other entry which he contests, and until this is done no right to make entry thereof exists in his behalf. The complainant herein does not aver that he has ever succeeded in obtaining a cancellation of the Weed entry, but, on the contrary, the facts averred in the bill show that this entry yet remains uncanceled. The real contention of the complainant is that, if he had been permitted to continue the contest in the land department, he would have succeeded in obtaining a cancellation of the entry, and that congress had no right to terminate the jurisdiction of the land department, and thus deprive him of the privilege of continuing the litigation over the validity of the Weed entry. By filing the present bill the complainant practically admits that the jurisdiction of the land department over the matter is at an end, and therefore complainant now appeals to the court upon the theory that he has such a vested interest in the land that he is entitled to a decree conveying to him the legal title of the premises, and cites the cases of U. S. v. Fitzgerald, 15 Pet. 407, 10 L. Ed. 785; Smith v. U. S., 10 Pet. 330, 9 L. Ed. 442; Delassus v. U. S., 9 Pet. 133, 9 L. Ed. 71; and Magann v. Segal, 34 C. C. A. 323, 92 Fed. 252, —in support of his contention; but an examination of these cases shows that none of them gives support to the rule contended for by complainant. As

is pointed out in Frisbie v. Whitney, 9 Wall. 187–196, 19 L. Ed. 668: 'The courts may very properly correct the injustice done by the land officers in refusing to accord rights, however inchoate, which are protected by laws still in existence, while they can only consider vested rights when those rights are sought to be enforced in opposition to the repeal or modification of the laws on which they are founded. The argument is urged with much zeal that, because complainant did all that was in the power of any one to do towards perfecting his claims, he should not be held responsible for what could not be done. To this we reply, as we did in the case of Rector v. Ashley, 6 Wall. 142, 18 L. Ed. 733, that the rights of a claimant are to be measured by the acts of congress, and not by what he may or may not be able to do; and, if a sound construction of these acts shows that he acquired no vested interest in the land, then, as his rights are created by the statutes, they must be governed by their provisions, whether they be hard or lenient.'

"The act of congress upon which complainant relies in this case conferred upon him the privilege of entering the land in dispute when, and only when, he should succeed in canceling the prior entry in favor of Weed. This he has not yet succeeded in doing. He entered the contest against Weed in October, 1886, but never obtained a cancellation of the entry; the decisions of the land department being adverse to him until in December, 1894, congress passed an act confirming the Weed entry, and thus made it impossible for the land department to further entertain the contest over the validity of the Weed entry. That entry therefore remains uncanceled, and therefore a right to enter the land has never become vested in the complainant. He has never made an entry upon the land, nor has he perfected a right to make an entry thereof by securing a cancellation of the Weed entry, and therefore he has no vested right or interest in the land of which he can avail himself to defeat the operation of the act of congress confirming the Weed entry.

"Some reliance is placed, in argument, upon the fact that complainant has paid the costs of the contest and certain fees to land department officials. These payments were made with full knowledge of the fact that they would not affect the right to the land unless the Weed entry was canceled. The payments were not made with the expectation that by reason thereof the land department would convey the title to the complainant, but they were made in aid of the contest which complainant initiated against the Weed entry, and complainant well knew that these payments would not give him any right to enter the land unless he succeeded in procuring a cancellation of the previous entry made by Weed; and, as he has failed in his effort to procure a cancellation of this entry, he has not established a right to enter the land by the mere payment of the costs and fees. Under the act of May 14, 1880, it is the procurement of a cancellation of a previous entry, and the payment of the land-office fees, that creates the right to a preference in the entry of the land upon the part of the contestant. A performance of one only of the conditions is not sufficient. Both conditions are essential in the creation of the right. The complainant admits that he has not secured the cancellation of the Weed entry, and therefore has failed to show that he has become entitled to enter the land. He never has entered the same, and therefore has no right in the land. He has not perfected a right to enter the land, having failed to secure a cancellation of the Weed entry, and therefore there is no ground shown upon which the court could base a decree that the defendants hold the legal title for his benefit. The utmost he can claim, in view of the facts recited in the bill, is that, if he had been permitted to prolong the contest over the Weed entry before the land department, he might have succeeded in ultimately procuring a cancellation of the entry; but this court cannot accept, as ground for its action, a possibility of this kind, in view of the requirements of the act of congress that the contestant must succeed in procuring a cancellation of the existing entry before he becomes entitled to create a right in the land by making entry thereof. The demurrer is therefore sustained, and the amended bill is dismissed on the merits, at the costs of complainant."

The decree of the circuit court is affirmed.