GEBO, APPELLANT, v. CLARKE FORK COAL MINING COMPANY ET AL., RESPONDENTS.

(No. 1,816.)

(Submitted March 4, 1904.    Decided March 11, 1904.)

*Public Lands — Fraud in Obtaining Patent — Patentee as Trustee—Pleading—Patent—Presumption.*

1.    A complaint, to hold the patentee of public land a trustee thereof for plaintiff, alleging merely that plaintiff made application to purchase it as coal land, filing a declaratory statement in the land office, and went into pos-

session and improved it; that defendant caused a forged relinquishment of plaintiff's rights to be filed in the land office, of which she did not know till five months after expiration of the time within which she might have made proof and payment, and that defendant then purchased the land, and a patent was issued to him—does not state a cause of action; it not showing that plaintiff did not also make a voluntary relinquishment, by failure to prosecute work on the land, or to make, or offer to make, seasonable proof and payment.

2.  A patent itself is in the nature of an official declaration by that branch of the government to which the disposition of the public lands is intrusted that all the requirements preliminary to its issue have been complied with.

3.  In the absence of any showing to the contrary, the presumption will be indulged that the officials of the land department had before them sufficient proof to justify the issuing of the patent to the patentee.

*Appeal from District Court, Carbon County; Frank Henry, Judge.*

ACTION by Ella D. Gebo against the Clarke Fork Coal Mining Company and another. Judgment for defendants. Plaintiff appeals. Affirmed.

## STATEMENT OF THE CASE.

This is a suit in equity, the object of which is to have the defendants (respondents here) declared to be trustees and to hold certain coal lands in trust for the use and benefit of the plaintiff (appellant here).

The amended complaint alleges that on March 24, 1897, George Gebo and Ella D. Gebo in good faith made a joint application to purchase 319 acres of the public coal lands of the United States under the provisions of Section 2348, Rev. St. U. S. (U. S. Comp. St. 1901, p. 1440); that an affidavit and declaratory statement were duly filed in the proper land office as required by law, and the rules and regulations of the interior department respecting the sale of coal lands; that applicants paid the filing fee, and received a receipt from the receiver of the United States land office, to which was appended a notice that applicants' filing would expire on May 20, 1898. The complaint contains averments showing that plaintiff was a citizen of the United States, possessed of the requisite qualifications to enter coal lands, but nothing whatever is said as to the

qualification of her co-applicant. The complaint also alleges that plaintiff went into possession of the land, and opened a coal mine thereon, and otherwise improved the property. It is then alleged that on August 31, 1897, a false and fraudulent writing purporting to have been signed and verified by appellant, and by the terms of which George Gebo and plaintiff relinquished to the United States all their right, title and interest in and to the land described in their application, was filed in the land office; that such false and forged relinquishment was procured and filed by and on behalf of S. W. Gebo, W. C. Strohm and Frederick H. Davis, to enable Alfred Thomas and F. B. Burchmore to enter and purchase said land for the use and benefit of Gebo, Strohm and Davis, and that, immediately after the filing of said forged relinquishment, Thomas and Burchmore did purchase the land in controversy; that thereafter, in December, 1897, they (Thomas and Burchmore) sold their interests to Davis and Strohm; that afterwards Strohm sold his interest to Davis, and Davis on September 20, 1898, sold the property to the Clarke Fork Coal Mining Company, taking a mortgage on the entire property to secure the purchase price, $100,000; that a patent from the United States was duly issued to Thomas and Burchmore; that of the fraudulent acts mentioned all purchasers subsequent to Thomas and Burchmore had actual knowledge; that the mining company is insolvent; that on June 14, 1899, appellant made a written offer to pay to the mining company $3,190.20, being one-half of the original purchase price of the property from the United States, and demanded that the company convey to her an undivided one-half interest therein; that, by reason of the fraudulent acts mentioned, the plaintiff was prevented from procuring from the United States legal title to the land in controversy. The complaint then alleges: "(18) The plaintiff first had knowledge of the fraudulent acts herein alleged on or about the 1st of November, 1898." The prayer of the complaint is that the company be declared to be a trustee for the use and benefit of the plaintiff to the extent of a one-half interest in the property; that it be compelled to con-

vey to her such interest; that it be compelled to account to her
for the rents, issues and profits; that the defendant Davis be
required to release his mortgage on said one-half interest; and
that plaintiff have judgment for such sum as may be found due
on an accounting, and for her costs.   To this complaint defend-
ants interposed a general demurrer, which was sustained by the
court; and, plaintiff failing to plead further, judgment for
costs was entered in favor of defendants, from which plaintiff
appealed.

*Mr. C. L. Merrill,* for Appellant.

*Mr. John A. Luce,* for Respondents.

MR. JUSTICE HOLLOWAY, after stating the case, de-
livered the opinion of the court.

The demurrer challenges the jurisdiction of the court, and
the sufficiency of the allegations of the complaint to state a cause
of action; but, as the last ground of the demurrer only is con-
tended for by the respondents in this court, our examination is
confined to that inquiry.

Appellant argues at length that this character of action is
maintainable, and this is readily conceded by respondents, so
that the only inquiry before us is, does the complaint state facts
sufficient to constitute a cause of action, or bring the plaintiff
within the rule applicable to such actions?

The rule is that if, as a matter of fact, the government was
imposed upon, and by fraud or mistake issued a patent to some
other person, when in truth the plaintiff was entitled to it, then,
upon a proper showing, a court of equity will decree the pat-
entee to be a trustee, and to hold the land in trust for the use
and benefit of the party really entitled to it.   (*Meyendorf* v.
*Frohner,* 3 Mont. 282.)   But what is a proper showing?   The
very foundation of the rule is that the patent was issued to an-
other when plaintiff was justly entitled to it.   Then the com-
plaint must show such facts as that it will appear therefrom

that she has connected herself with the original source of title in the government, and that her rights are injuriously affected by the existence of the outstanding patent. She must show such equities in herself as will control the legal title in the defendants' hands. (*Power* v. *Sla,* 24 Mont. 243, 61 Pac. 468.) The filing of the so-called declaratory statement does not even withdraw the land from entry, but any number of filings may be made upon the same land successively. The only effect of the filing of such declaratory statements is to give to the applicants, in the order of their filings, preference rights to purchase the land, and that only for a period of fourteen months from the date of filing. In other words, such filing only initiates a right, which may be lost by relinquishment, by failure to prosecute work on the land in good faith, or by failure to make proof and payment within the fourteen months; and, in order to make out a cause of action, plaintiff must show, first, that she did not voluntarily relinquish her right so initiated, and, second, that she did in good faith prosecute work upon the land, and, within the time allowed by law, did make proof and payment for the land, or at least offer to do so. She must show affirmatively that upon her part she did, or offered to do, all that was necessary to be done in order to secure the patent, and upon the doing of which patent should have issued to her (*Bohall* v. *Dilla,* 114 U. S. 47, 5 Sup. Ct. 782, 29 L. Ed. 61) ; and these in addition to the facts necessary to be shown in order to entitle her to make the filing in the first instance. If, as a matter of fact, plaintiff had known of the filing of the so-called forged relinquishment before the expiration of the fourteen months, she might with some show of reason claim that it was unnecessary for her to offer to make proof or tender payment, upon the theory that the law will not require the doing of a vain thing; but, on the contrary, she shows affirmatively that she did not know of the existence of such relinquishment until more than five months after the expiration of the time within which she might have made proof and payment, and yet there is no allegation in the complaint that within the fourteen months, or at all, she ever

made any offer to prove up on the land or pay for it. The reason for the necessity of this allegation is apparent, for, if there was another valid filing made upon the same land subsequent to the plaintiff's, and prior to the expiration of such period—and there is no allegation that there was not—and such subsequent applicant had in good faith complied with the law, plaintiff's right to patent would have ceased absolutely on May 20, 1898, and thereafter she would have been a stranger to the title (Section 2350, Rev. St. U. S. [U. S. Comp. St. 1901, page 1441]), and unable to maintain this action at all. The complaint must negative the fact of plaintiff's voluntary relinquishment of her filing on the land. It is not enough to show an initiation of a valid claim, but she must show a valid, subsisting claim during the time allowed by law for finally merging such claim into patent. The mere allegation that a fraudulent relinquishment was filed by certain parties is not an allegation that plaintiff herself never voluntarily relinquished her claim. It is not enough for her to show that the patent should not have been issued to Thomas and Burchmore. (*Sparks* v. *Pierce,* 115 U. S. 408, 6 Sup. Ct. 102, 29 L. Ed. 428.) She must show affirmatively that it was the filing of the so-called fraudulent relinquishment alone which deceived or misled the officials of the government, if they were deceived or misled, who otherwise would have received her proof and payment for the land, and issued to her the patent therefor. (*Lee* v. *Johnson,* 116 U. S. 48, 6 Sup. Ct. 249, 29 L. Ed. 570.) And the reason for this rule is manifest, for the execution and delivery of the patent to Thomas and Burchmore were the final acts of the officials of the government in the transfer of its title to the land, and, as those acts could lawfully be performed only after certain steps had been taken, the patent itself is in the nature of an official declaration by that branch of the government to which the disposition of the public lands is intrusted that all the requirements preliminary to its issue have been complied with. (*Smelting Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875.) In the absence of any showing to the contrary, the presumption will be

indulged that the officials of the land department had before them sufficient proof to justify the issuing of the patent to Thomas and Burchmore. (*Lee* v. *Johnson, supra.*)

Numerous other infirmities in the complaint have been pointed out, but the foregoing considerations are sufficient to demonstrate its insufficiency, and the correctness of the trial court's ruling.

The judgment is affirmed.

*Affirmed.*

