GRAHAM, APPELLANT, v. GREAT FALLS WATER POWER AND TOWNSITE COMPANY ET AL., RESPONDENTS.

(No. 1,861.)

(Submitted April 20, 1904.   Decided May 16, 1904.)

*Public Lands—Pre-emption—Entry—Contest—Cancellation— Vested Rights—Bona Fide Purchasers—Patents—Equity.*

1. *Held,* that a certain pre-emption entry was never canceled, so as to entitle the contestant to the preferential right to enter the land given to a successful contestant by Act of Congress, May 14, 1880, c. 89, Section 2.
2. The preferential right given to a successful contestant by Act of Congress, May 14, 1880, c. 89, Section 2, was not a property or vested right, nor a right which could be enforced against the government, but a mere privilege of becoming the first entryman.

3.   Congress, by the passage of Act March 3, 1891 (26 Stat. 1098), providing
     for the confirmation of contested pre-emptions in the hands of *bona fide*
     purchasers, cut off the rights of successful contestants under Act of Con-
     gress, May 14, 1880.
4.   The land department's finding on the issue as to whether certain persons
     are *bona fide* purchasers of contested pre-emptions is conclusive on the
     state courts.
5.   The title conveyed by a patent will not be disturbed where the proof of its
     invalidity is not clear and convincing.
6.   In an action for the purpose of having a patentee declared plaintiff's trustee
     for the land, before plaintiff can prevail, he must not only show that the
     patentee was not entitled to the patent, but also that he is.
7.   Plaintiff in a suit in equity to declare *bona fide* purchasers of a pre-emption
     to be his trustees, praying that they be decreed to execute and deliver to
     him a deed therefor free from all incumbrances, predicated on his contest
     of the original entry, has no equity which will prevail over the title of
     defendants, where he never made a declaration of homestead as to the
     contested pre-emption, nor paid any fees for the land, and his good faith
     in bringing the suit is questionable.

MR. JUSTICE MILBURN dissenting in part.

*Appeal from District Court, Cascade County; J. B. Leslie,*
*Judge.*

SUIT by James Graham against the Great Falls Water Power
& Townsite Company and others. From a judgment for de-
fendants, plaintiff appeals. Affirmed.

*Mr. George M. Bourquin,* for Appellant.

*Mr. I. Parker Veazey,* for Respondents.

MR. COMMISSIONER CALLAWAY prepared the fol-
lowing opinion for the court:

The defendant had judgment below upon the pleadings, and
plaintiff has appealed. From the complaint, answer and reply
it appears that on February 24, 1883, one Archibald C. Camp-
bell filed in the United States land office at Helena, Montana,
a pre-emption declaratory statement upon the southeast quarter
of section 10, in township 20 north, of range 3 east of the Mon-
tana principal meridian, alleging his settlement thereon as of
date February 16, 1883. In the following October he sub-
mitted final proof thereon, upon which cash entry No. 1,373,
Helena, Montana, series, was made for the land in the local

land office, and on October 17, 1883, he obtained the usual receiver's final receipt therefor.   Three days thereafter Campbell sold the land to Timothy E. Collins for $1,000.   Thereafter Collins sold the land to Paris Gibson and Robert Vaughn. Thereafter, and on October 25, 1886, Vaughn conveyed an undivided one-half interest therein to James J. Hill.   On February 23, 1887, Gibson and wife conveyed to said Hill their undivided half interest therein; and on July 19, 1887, Hill and wife conveyed the land to the defendant, the Great Falls Water Power & Townsite Company, hereafter to be referred to as the "Townsite Company."   The defendant St. Paul, Minneapolis & Manitoba Railway Company is a grantee of the defendant townsite company.   On May 28, 1887, the plaintiff filed in the United States land office at Helena an offer to contest the Campbell entry, alleging that it was fraudulent and invalid.   Plaintiff's offer to contest was allowed, and the hearing thereupon was had, commencing in December, 1887, and extending into January, 1888.   Prior to the hearing Campbell died.   The defendant townsite company defended the contest proceedings.

It seems that the local land officers at Helena, Montana, dismissed the contest, and plaintiff appealed to the commissioner of the general land office.   On November 25, 1890, the commissioner rendered a decision holding the Campbell entry intact, and adjudged that the contest initiated by Graham be dismissed.   On December 19, 1890, plaintiff prayed for a review and reconsideration of the commissioner's decision rendered November 25th preceding, which was granted.   On February 25, 1891, the commissioner rendered a decision revoking and setting aside his decision of November 25, 1890, and holding Campbell's cash entry for cancellation.   On March 26, 1891, the townsite company applied to the commissioner of the general land office by petition to have the Campbell entry declared confirmed by virtue of Section 7 of the Act of Congress approved March 3, 1891, c. 561, 26 Stat. 1098, upon the ground that the townsite company was a *bona fide* purchaser of the land

within the meaning of the Act. Thereafter, and on April 24, 1891, the commissioner made and filed an order suspending his previous order of February 25, 1891, staying all proceedings thereunder. Thereafter the commissioner, having taken proof upon the question as to whether the townsite company was a *bona fide* purchaser within the meaning of the Act of March 3, 1891, found it so to be, and declared the Campbell entry confirmed by virtue of said Act. From this action on the part of the commissioner Graham appealed to the secretary of the interior, who, on May 23, 1895, dismissed the appeal, approved the order of the commissioner, and confirmed the Campbell entry to the townsite company. Patent for the land was issued and delivered to the company on August 17, 1895. On December 24, 1898, the plaintiff commenced this action for the purpose of having the defendants declared his trustees for the land in question, praying that they be decreed to execute and deliver to him a deed therefor free from all incumbrances done or suffered by them.

Plaintiff contends: (1) That he had the first legal claim to the land upon the cancellation of the entry. (2) That the Campbell entry was canceled when the Act was passed, and the commissioner's judgment holding the same for cancellation has never been modified, reversed or set aside; that it was erroneously and wrongly suspended because of the misconstruction of the operation of the Act of 1891. (3) By accepting the government's offer to contest, spending his money thereon, and procuring the cancellation of the entry, plaintiff had a vested right to purchase the land, which right was properly within the meaning of the law. (4) Contests then pending were not intended to be included within the operation of the Act of 1891.

When plaintiff began his contest he relied upon Section 2 of the Act of May 14, 1880, c. 89, Sec. 2, in which it is provided that "in all cases where any person has contested, paid the land office fees, and procured the cancellation of any pre-emption, homestead or timber culture entry, he shall be notified by the register of the land office of the district in which such land is

situated of such cancellation, and shall be allowed thirty days from date of such notice to enter said lands." 21 Stat. 140 (U. S. Comp. St. 1901, p. 1392.)

As we have seen, on February 25, 1891, plaintiff's contest was sustained, and the Campbell entry was held for cancellation. On March 3, 1891, "An Act to repeal timber culture laws, and for other purposes," became a law. Section 7 of this Act provided in part: "And all entries made under the pre-emption, homestead, desert land or timber culture laws, in which final proof and payment may have been made and certificates issued, and to which there are no adverse claims originating prior to final entry and which have been sold or incumbered prior to the first day of March, eighteen hundred and eighty-eight, and after final entry, to bona fide purchasers, or incumbrancers, for a valuable consideration, shall, unless upon an investigation by a government agent, fraud on the part of the purchaser has been found, be confirmed and patented upon presentation of satisfactory proof to the land department of such sale or incumbrance." (26 Stat. 1098.)

So long as title to the public domain remains in the United States, the individual citizen has no privileges therein save such as are granted by statute. His right to obtain land under the federal statutes is a mere bounty extended to him by a generous government. Until his rights become vested in a specified tract of land, as we shall see, congress may take from him any privileges it has theretofore extended to him.

The Act of 1880, *supra*, was passed for the purpose of ex-posing and preventing fraud in the acquisition of the public lands, as well as to restore the lands to the public domain. As a reward for prosecuting a contest to a successful completion, congress gave to the contestant a preferential right, as against other entrymen, to enter the land which had been restored to the public domain through his efforts. While the fraudulent entry was pending, the land was temporarily withdrawn out of the public domain, and beyond the reach of other entrymen. (*Hodges* v. *Colcord*, 193 U. S. 192, 24 Sup. Ct. 433, 48 L. Ed.)

So that, unless congress otherwise disposed of the land embraced in the Campbell entry upon its cancellation, plaintiff had the the right to purchase it. But was the Campbell entry ever canceled? The local officers recommended that plaintiff's contest be dismissed. The commissioner of the general land office decided against plaintiff, and directed such dismissal. Upon rehearing the commissioner revoked and set aside his first decision, and held the Campbell entry for cancellation. The townsite company had sixty days in which to appeal from this decision to the secretary of the interior. (Rule 86, 4 Land Dec. 47.) Failing to appeal, the commissioner's decision would have become final. (Rule 112, 4 Land Dec. 49; *Murray* v. *Polglase,* 17 Mont. 455, 43 Pac. 505.) Within the time limited for appeal the townsite company applied for a confirmation of its title under the Act of March 3, 1891, alleging itself to be a *bona fide* purchaser thereof. On April 24, 1891, also within the time allowed the townsite company to appeal, the commissioner suspended his judgment of February 25, 1891, and stayed all proceedings thereunder, and, upon taking proof, found the townsite company to be a *bona fide* purchaser of the land, confirmed the entry, and dismissed plaintiff's contest. It is apparent, therefore, that plaintiff never procured the cancellation of the Campbell entry. It never *was* canceled.

If the commissioner had the right to revoke and set aside his judgment of November 25, 1890, he had a like right to suspend that of February 25, 1891. He finally dismissed plaintiff's contest, which was a final judgment in favor of the townsite company. Whether he misconstrued the law in so doing we shall see later on. But under the view we take of this case it is immaterial whether plaintiff procured the cancellation of the Campbell entry or not. Let us concede that he did procure its cancellation, and therefore had the first right to enter the tract of land thus restored to the public domain. His position then was the same as if he had been a pre-emptor who had made settlement of and improvement upon public land, but had not yet made

entry thereof.   It will be remembered that a pre-emptor was one who, by settlement upon and improvement of public land, acquired a preferential right to purchase the particular tract in his occupancy, if it did not exceed 160 acres in extent, at the minimum price thereof, when the land was or became open to sale.   Settlement and improvement were prerequisite to the entry; but, having made such, the claimant's right to enter the land within the time limited by statute was paramount over all except the United States.   So, under the Act of May 14, 1880, a contestant who procured the cancellation of a pre-emption, homestead or timber culture entry was allowed a preferential right to enter the lands involved.   This preferential right began when the contestant received notice of the cancellation from the register, and it continued for thirty days.

It is evident that the pre-emptor's right of entry is the same as the successful contestant's; they are of like degree.   The pre-emptor was a settler upon the public land, and had a preferential right to enter it.   A contest having been sustained, the land was restored to the public domain, and the contestant had a preferential right to enter it.   But this right was in either case only a right to be preferred over any other claimant. It was the privilege of becoming the first entryman or purchaser of the land.   It was not a right which could be enforced against the government.   It was not a right which could be sold, incumbered or inherited.   It was a mere personal privilege.   It was not a vested right.   In order for plaintiff to avoid the force of the Act of March 3, 1891, he must show that he has a vested right against the United States; otherwise congress had the right to dispose of the land as it saw fit.   Our view of this matter is amply sustained by the authorities.

The fifth amendment to the federal constitution declares that no person shall be deprived of life, liberty or property without due process of law.   This is the section under which it is claimed that certain rights become vested; that is, they become such rights as are generally included within the term "property."

In the case of *Evans-Snider-Buel Co.* v. *McFadden*, 105 Fed. 293, 44 C. C. A. 494, 58 L. R. A. 900, Thayer, circuit judge, speaking for the court, said: "The phrase ' a vested right' has no very precise signification.   It is an expression which is not used in the federal constitution, nor in any of its amendments; the language of the fifth amendment being that 'no person shall * * * be deprived of * * * property without due process of law.'   In the law of real property—where it is most frequently employed—the word 'vested' is used to define an estate, either present or future, the title to which has become established in some person or persons, and is no longer subject to any contingency.   And when the phrase ' a vested right' or a 'vested. interest' is used in other relations it may with reasonable precision be held to mean some right or interest in property that has become fixed or established, and is no longer open to doubt or controversy."   This case was appealed to the Supreme Court of the United States, which approved of the opinion in express terms.   (185 U. S. 505, 22 Sup. Ct. 758, 46 L. Ed. 1012.   And see *Calder* v. *Bull,* 3 Dall. 386, 1 L. Ed. 648; Black's Constitutional Law, Sec. 154.)

The two leading cases on this subject are *Frisbie* v. *Whitney,* 9 Wall. 187, 19 L. Ed. 668, and *The Yosemite Valley Case,* 15 Wall. 77, 21 L. Ed. 82.   Mr. Justice Field, speaking for the court in *The Yosemite Valley Case,* said: "The question here presented was before this court, and was carefully considered, in the case of *Frisbie* v. *Whitney,* reported in the 9th Wallace (19 L. Ed.).   And it was there held that under the pre-emption laws mere occupation and improvement of any portion of the public lands of the United States with a view to pre-emption do not confer upon the settler any right in the land occupied, *as against the United States,* or impair in any respect the power of congress to dispose of the land in any way it may deem proper; and that the power of regulation and disposition conferred upon congress by the constitution only ceases when all the preliminary acts prescribed by those laws for the acquisition of the title, including the payment of the price of

the land, have been performed by the settler. When these prerequisites have been complied with, the settler for the first time acquires a vested interest in the premises occupied by him, of which he cannot be subsequently deprived." And see *Campbell v. Wade,* 132 U. S. 34, 10 Sup. Ct. 9, 33 L. Ed. 240; *Northern Pacific Railroad Co. v. Smith,* 171 U. S. 260, 18 Sup. Ct. 794, 43 L. Ed. 157; *Emblen v. Lincoln Land Co.* (C. C.), 94 Fed. 710; *Id.,* 102 Fed. 559, 42 C. C. A. 499; *Id.,* 184 U. S. 660, 22 Sup. Ct. 523, 46 L. Ed. 736; *De Land v. Day & Son,* 45 Iowa, 37; *Northern Pacific R. R. Co. v. Perento,* 3 Dak. 217, 14 N. W. 103; *Pierce v. Sparks,* 4 Dak. 1, 22 N. W. 491; *Forbes v. Driscoll,* 4 Dak. 336, 31 N. W. 633; *Hutton v. Frisbie,* 37 Cal. 475; *Low v. Hutchings,* 41 Cal. 634; *Farley v. Spring Valley M. & I. Co.,* 58 Cal. 142; *Buxton v. Traver,* 67 Cal. 171, 7 Pac. 450; *Busch v. Donohue,* 31 Mich. 481; *Manning v. San Jacinto Tin Co.,* 7 Sawy. 418, 9 Fed. 726; *Allen v. Forrest,* 8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606.

In the case of *Norton v. Evans,* 82 Fed. 804, 27 C. C. A. 168, Brewer, circuit justice, said: "His contention is, however, that he had tried to enter the land, had a right to enter it; that his application was erroneously refused by the local land officers; that he had sought to settle upon the land, and had been prevented therefrom by the wrongful acts of one of the defendants; that all this took place before the passage of the Act of 1887; and that thereby he had acquired a vested right in the land, which even congress could not take away. He refers to *Ard v. Brandon,* 156 U. S. 537, 15 Sup. Ct. 406, 39 L. Ed. 524, as authority for the proposition that he could not be deprived of any rights by the wrongful acts of the local land officers, and insists that therefore the case must be treated as though he had actually made a homestead entry, and had acquired such a right in the land as was beyond the reach of congress to disturb by subsequent legislation; and concludes therefrom that the Act of 1887 (Act March 3, 1887, c. 376, 24 Stat. 556; U. S. Comp. St. 1901, p. 1595) has no application to his case. We are unable to agree with this contention. He is in no better

position than if he had been allowed by the local land office to make the entry. Such an entry creates no vested rights as against the United States, and does not interfere with the power of congress by subsequent legislation to dispose of the land. *Frisbie* v. *Whitney,* 9 Wall. 187, 19 L. Ed. 668; *The Yosemite Valley Case,* 15 Wall. 77, 21 L. Ed. 82; *Buxton* v. *Traver,* 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920; *Campbell* v. *Wade,* 132 U. S. 34, 10 Sup. Ct. 9, 33 L. Ed. 240." *Shiver* v. *United States,* 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231; *Emblen* v. *Lincoln Land Co.* (C. C.), 94 Fed. 710; *Id.,* 102 Fed. 559, 42 C. C. A. 499; *Id.,* 184 U. S. 660, 22 Sup. Ct. 523, 46 L. Ed. 736.

The Act of March 3, 1891, was a remedial statute—a statute of repose. It was intended to protect *bona fide* purchasers only. It extended no clemency or protection to the fraudulent entryman. At the time it was passed that portion of the Northwest with which we are dealing was in the midst of an era of settlement and development. Title to all lands was secured from the United States through its general land laws or by special Acts of congress. It often occurred that an entryman settled upon a tract of land, procured his final receipt therefor, sold to a *bona fide* purchaser and moved on. Then a contest was initiated against the entry. No patent had as yet been issued. The purchaser might find himself deprived of that which he had bought innocently, in good faith, and for a valuable consideration. Possibly he could not disprove the allegations made by the contestant. His grantor was gone, or perhaps had died, as had defendants' predecessor, Campbell. Such a condition of affairs necessarily retarded the growth and development of the country, and it is undoubted that congress passed the Act in question with a view to remedy such evils. The very terms of the Act confirm this. There can be no doubt that congress had the power to pass the Act, and that it inured to the benefit of the defendants in this case. It operated to cut off plaintiff's contest. Whether congress intended that the Act should cut off pending contests where the land was in possession of *bona fide* purchasers

can hardly be open to question in view of the language employed. The commissioner of the general land office and secretary of the interior decided that it did so operate, and, we think, correctly. As we have seen, the plaintiff had acquired no vested right as against the United States, and congress could cut off his contest if it saw fit so to do. (*The Emblen Cases, supra.*)

The land department decided that the defendant townsite company was a *bona fide* purchaser. Plaintiff does not contend in his brief, nor did he in argument, that defendants are not *bona fide* purchasers; but whether he does or not is immaterial under the law. The land department's finding upon that issue is concusive upon us. (*Small* v. *Rakestraw*, 28 Mont. 413, 72 Pac. 746, and cases cited.)

Counsel for plaintiff here contends, as did counsel in *Frisbie* v. *Whitney, supra,* that because plaintiff "did all that was in the power of any one to do toward perfecting his claim, he should not be held responsible for what could not be done," and we may answer his argument in the language used by Mr. Justice Miller in that case: "To this we reply, as we did in the case of *Rector* v. *Ashley,* 6 Wall. 142, 18 L. Ed. 733, that the rights of a claimant are to be measured by the Acts of congress, and not by what he may or may not be able to do; and, if a sound construction of these Acts shows that he had acquired no vested interest in the land, then, as his rights are created by the statutes, they must be governed by their provisions, whether they be hard or lenient." And the suggestion of Mr. Justice Field in the *Yosemite Valley Case, supra,* is also pertinent here: "The whole difficulty in the argument of the defendant's counsel arises from his confounding the distinction made in all the cases, whenever necessary for their decision, between the acquisition by the settler of a *legal right to the land* occupied by him as against the owner, the United States; and the acquisition by him of a *legal right as against other parties to be preferred in its purchase,* when the United States have determined to sell. It seems to us little less than absurd to say that a settler or any other person, by acquiring a right to be preferred in the pur-·

chase of property, provided a sale is made by the owner, thereby acquires a right to compel the owner to sell, or such an interest in the property as to deprive the owner of the power to control its disposition." From the foregoing it is apparent that plaintiff's action cannot be maintained.

The relief dmanded by plaintiff must be denied him for another reason. Under the well-known rule, before he may prevail, he must not only show that the townsite company was not entitled to the patent, but also that he is. (*Power* v. *Sla,* 24 Mont. 243, 61 Pac. 468; *Small* v. *Rakestraw,* 28 Mont. 413, 72 Pac. 746; *Gebo* v. *Clarke Fork Coal Mining Co.,* 30 Mont. 87, 75 Pac. 859.) It is apparent from the record that he cannot do this.

No declaration of homestead has ever been made in the land office, or fees paid for the land by plaintiff. It is now too late to do so, because title has passed from the United States. The time for these acts to be done, if there ever was such a time, is forever gone. Yet the plaintiff, without having done the acts prescribed by the government with respect to the acquisition of a patent under the homestead laws, asks to have the legal title to the land conveyed to him free from all charges and incumbrances. "The true doctrine is that, until the complainant had complied with all the statutory requisitions—had filed his declaration, and paid the sum of money required, as well as occupied, cultivated and improved the land, as provided in the statute—he had no vested rights in the premises, no rights which might not be cut off and defeated by a grant by the United States to a third party, and hence no right which, at least in the absence of fraud or gross mistake, he could assert against such third party." (*Higgins* v. *Board of Trustees,* 94 Ala. 380, 10 South. 312.) No such fraud or gross mistake appears in this case.

A patent is an instrument of security and repose. The title it conveys should not be disturbed unless the proof of its invalidity be clear and convincing.

Plaintiff asks a court of equity to take the land away from defendants, and give it to him. He says it was inequitable for

congress to pass an Act which took away his right to contest, after he had spent time and money in its pursuit, and after he had obtained a favorable decision from the commissioner. Conceding this to be true, is it equitable to take the land away from the defendants, *bona fide* purchasers? We are not impressed with plaintiff's good faith in this case. What are the facts as disclosed by the record? At the time of the settlement by Campbell upon the land and of his entry thereof it was remote from any village or city, and was of no apparent value for any other purposes than of cultivation. There was no village or settlement on the present site of the city of Great Falls. The county of Cascade had not been organized. The land lay in the county of Chouteau, the nearest village then being Fort Benton, which was distant about forty-five miles. At that time the line of the defendant railway company did not extend into the present limits of the state of Montana. The defendant townsite company was incorporated on May 9, 1887. During that year the line of the defendant railway company was extended into the then territory of Montana, and through the now existing counties of Valley, Chouteau and Cascade, and over and across the lands described in the complaint. In anticipation of and because of the proposed extension of the said line of railway, there had grown up the then small village of Great Falls. The Montana Central Railway Company was organized in the year 1886 for the purpose of constructing a railway to connect with that of the defendant railway company from a point on Sun river, less than a mile distant from the land described in the complaint, to the city of Helena, in Lewis and Clarke county, and other points; and prior to the initiation of the contest by plaintiff was engaged in the construction of its railway line from said point on Sun river to the city of Butte. Owing to the construction of these railway lines and the growth and development of the village, which subsequently became the city of Great Falls, the land in question, in the month of May, 1887, when plaintiff initiated his contest, had greatly increased in value. Looking backward a moment, we see that in October,

1883, Campbell obtained his final receipt, and sold the land to Collins. Collins sold to Gibson and Vaughn. More than three years elapsed. Nothing was done by plaintiff; nothing until the land had become valuable for railway and townsite purposes, and when it was apparent that a city was to spring up within a stone's throw. Then, after the final receipt had been treated as equivalent to a patent by the world for over three and a half years, and after Hill had sold the land to the townsite company, plaintiff began his contest. Further discussion is unnecessary.

We are of opinion that the judgment should be affirmed.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment is affirmed.

MR. JUSTICE MILBURN: I concur in the above order of this court. I concur in the opinion in so far as it holds that the entry of Campbell was never canceled, and that Graham did not succeed in his contest. The rest of the opinion I think is unnecessary.

Rehearing denied June 7, 1904.